## MERLE A. KRINKE v. LYDIA TIMM AND ANOTHER.[1]

January 2, 1942.

No. 33,047.

*A. R. English,* for appellant.
*Julian E. Morten,* for respondent.

STONE, JUSTICE.

This case comes here on an appeal by defendant Joseph Timm from judgment in favor of plaintiff against both defendants. The case arose out of a collision between an automobile registered in the name of Lydia and driven by her, and a car in which the plaintiff was riding. The verdict was against both defendants. Defendant Joseph moved for judgment notwithstanding. That motion denied, judgment was entered on the verdict.

Recovery was sought on the theory that defendant Joseph Timm had registered the title to the automobile in the name of his daughter Lydia "for the sole purpose of avoiding liability by the said

[1]Reported in 1 N. W. (2d) 866.

defendant, Joseph Timm, for damages which might result to third persons" from its operation. The case was submitted·to the jury on the question whether or not Joseph, as well as Lydia, was interested in the ownership of the car. There is an express disclaimer by plaintiff that liability is sought under the family car doctrine. There is no claim of joint enterprise. The one question is whether there is evidence justifying the jury finding that Joseph was an owner of the car.

Lydia is unmarried, about 35 years of age, and lives mostly with her parents. Her father pays her no fixed wages for the work she does, but occasionally gives her "spending money." She worked for other people eight or ten weeks during the summer. It is undisputed that in 1935 Lydia negotiated for the purchase of the car here in question, the father furnishing the price. The car was registered in her name, the dealer paying the registration fee as part of the transaction. Her father apparently had nothing to do with the selection of the car or its registration except to furnish the price. Lydia customarily drove the car when she was in it. Other members of the family drove it only when she gave permission. Her father had general permission to use it when he desired. He also occasionally used another car which belonged to Lydia's brother, who also worked on the farm. The gas for both cars came from a storage tank on the farm. The father paid for it. Lydia paid her own registration fee each year.

The family-car doctrine being out of the case by concession of counsel, the field of consideration is somewhat narrowed. It must be limited to the theory of trial, which was, notwithstanding registry of the involved car in the name of the daughter, whether the father was the real owner. In the technical sense, title was in the daughter Lydia. But the evidence is open to inference that the purpose of appellant was to furnish not one but two automobiles for the use of the whole family, himself included. He not only paid for both cars, but also furnished about all the gas. Moreover, when Lydia's car was ruined by the accident he immediately replaced it by another, title to which was put in an-

other daughter. It was he who "ordered" the license for the new car. The other car, a Ford, was registered in the name of a son, who, like his sister Lydia, lived at home as a member of this typical and closely integrated farm family.

The father, daughter Lydia, and two sons, Henry and Harold, each had a driver's license. Appellant admitted in substance that not only he, but also the two sons, who were licensed to drive, used Lydia's car as it was needed about the farm.

Reasonable is the inference that appellant did have dominion over the cars whenever he chose to exercise it. Certainly he furnished both cars (and the third, new one) in the sense that he paid for them. Under such circumstances, the inference of a species of equitable and joint family ownership, in which the father shared, is reasonable. In such case, the location of legal title at the moment is not always determinative. "More may be considered than the naked title to the motor vehicle in determining who is the owner." Holmes v. Lilygren Motor Co. Inc. 201 Minn. 44, 48, 275 N. W. 416, 418. Again, "where the alleged title in a party appears to be part of an arrangement between the parties for purposes other than *bona fide* ownership by the person ostensibly holding the title, the trier of fact may look through the form to the substance of the transaction and say that the semblance of ownership is not the reality." Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 621, 279 N. W. 582, 586.

This accident occurred while the Timm family was en route to town for their week-end shopping and entertainment. That was clearly a family purpose and so the purpose of the father, who now seeks to escape liability for the result. So we cannot say that the jury was wrong in holding that he should not be successful.

Judgment affirmed.

LORING, JUSTICE (dissenting).

I dissent. Counsel for respondent, clearly recognizing that the family-car doctrine (now merged in the owner's responsibility

statute) being based on the theory of principal and agent or master and servant, was inapplicable, frankly and commendably disclaimed liability under that doctrine and with equally commendable frankness sought no recovery on the theory of joint enterprise, but grounded his action and theory of trial solely on the claim of title in the father, asserting that the car was registered in Lydia's name for the purpose of defeating possible future creditors of her father.

There is not a syllable of direct evidence that the father had, at the time the car was registered, any ulterior purpose in that regard or that he gave any direction that it should be so registered. Lydia negotiated the purchase, had the dealer cause it to be registered in her name, and continued to pay for the registration. It was used by the other members of the family only with her permission, her father having general permission. The transaction bore all the indicia of a gift. On the occasion of the accident she proposed the trip, and the others accompanied her. There is not a syllable in the evidence that raises a doubt as to the credibility of Lydia's evidence or that of her father.

There being no direct evidence of registration by Lydia to defraud possible future creditors of her father, the majority seek to justify the jury's verdict by resort to inferences from circumstances. Up to now the rule with reference to circumstantial proof has been deemed well established in this state. A jury has not been permitted to explore the realms of speculation, surmise, conjecture, or suspicion in drawing inferences from circumstances. This is particularly true where a choice is sought amongst numerous theories or possible inferences. To justify a verdict, the inference adopted must be able to pass scrutiny as the more probable of the inferences suggested. That the circumstances are merely "consistent with plaintiff's theory" is not enough. "Reasonable minds functioning judicially must be able to conclude from the circumstances that the theory adopted by the verdict outweighs and preponderates over any other theory." Smock v. Mankato Elks Club, 203 Minn. 265, 266, 280 N. W. 851, 852.

The circumstances relied upon by the majority to sustain the jury's finding of a fraudulent scheme are three: (1) The transaction by which the father paid for Lydia's car and later furnished gas when she was home; (2) the asserted purchase by him of the Ford car registered in the name of his son; (3) the registration by him in another daughter's name of a car purchased by the father after the accident to Lydia's car and five years after the purchase of Lydia's car. As to the second circumstance, the record is barren of evidence as to who paid for the Ford, so that circumstance is without probative force. As to the third, it appears to me that to draw an inference from a circumstance occurring five years after the transaction in question is too great a strain on logic and that the connection is too tenuous to justify an inference. It is significant in this connection that Lydia's crippled car was not traded into the new car. Had it been in reality the father's car it is likely this would have been done. This leaves but one circumstance for further comment. As to that, the normal inference to be drawn from the presentation of a car by a father to a dutiful daughter who works a good share of her time at home without wages is that the consideration is love and affection and the satisfaction that a parent experiences from conferring a benefit on his offspring. Parents understand that. At any rate, on farms in pre-motor-car days the gifts to children usually took the form of a colt or a horse, which was, of course, fed from fodder grown on the farm. The father's benefactions may have been somewhat tinged with the selfish motive of keeping valuable help on the farm. Now, apparently, the benefaction must take the form of a motorcar. To me, the inference of a gift to the daughter is, as a matter of law, more reasonable than the inference of fraudulent purpose, especially so when the direct, uncontradicted evidence is all to that effect. Lydia had worked at home most of the time for the 12 years after her majority. She had probably earned the value of the car and more. If the inference of gift is only equally as reasonable as that of a fraudulent scheme, then, up to now, this court has not permitted

the jury to guess at the result. Smock v. Mankato Elks Club, *supra,* and cases cited. Even to permit them to choose between two equally likely inferences is to vacate the judicial control that is necessary to the preservation of the jury system. We must not let a jury become a mere instrumentality to carry into effect, in disregard of the evidence, the modern socialistic theory, to give to him that hath not the little that he who hath has left. In last analysis, that is what has happened here. I cannot follow the majority in inferring from the payment by the father of the purchase price of this car that there was an intent to defraud subsequent creditors. The evidence relied on to overcome the *prima facie* case made by the registration and the undisputed testimony of Lydia and her father is at most only a very infirm basis for suspicion—a wholly insufficient foundation for a verdict. There is absolutely nothing in the evidence inconsistent with Lydia's ownership. There must be something more than this to sustain the verdict.

Nor can I subscribe to the creation of the new, undefined and perhaps undefinable theory of "equitable and joint family ownership," whatever that may be. To me it looks like the barren progeny of a miscegenetic *affaire* between the now superannuated family-car doctrine and a perverted joint enterprise theory. If it is proposed to legitimatize it into the family of judicial creations its hereditary limitations should be carefully scrutinized. Plaintiff contends for no such theory. The case was not so pleaded, tried, or argued here. Plaintiff's whole theory was that the registration in Lydia's name was a subterfuge. Either the title was in Lydia or it was in her father. Usually courts do not determine even well defined issues without adequate presentation *pro* and *con.*

I think judgment should be ordered for defendant Joseph.

HILTON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Loring.