HENRY HAUGEN AND ANOTHER v. DICK THAYER MOTOR COMPANY AND OTHERS.
GEORGE HAUGEN v. OTTO SCHLIMME AND ANOTHER.

91 N. W. (2d) 585.

July 18, 1958—Nos. 37,227, 37,231, 37,232, 37,396, 37,397, 37,480, 37,481.

*Eastvold & Pflueger,* for George Haugen.

*Gordon J. Mangan* and *William P. Westphal,* for Dick Thayer Motor Company.

*Field, Arvesen & Donoho,* for Otto Schlimme.

*Benson & Schreiner* and *Rosengren, Rufer & Blatti,* for Henry Haugen and Cleo Okeson.

MURPHY, JUSTICE.

This is an appeal from judgments and from various orders of the District Court of Big Stone County denying motions for judgment notwithstanding verdicts or for new trials in actions arising out of an automobile accident involving cars driven by one George Haugen and one Otto Schlimme. Henry Haugen was a guest passenger in the automobile driven by his brother, George. Cleo Okeson was a guest passenger in the car driven by Otto Schlimme, which automobile was alleged to have been the property of the Dick Thayer Motor Company. Individual actions were commenced by Henry Haugen and Cleo Okeson against Dick Thayer Motor Company, George Haugen, and Otto Schlimme for personal injuries resulting from the accident. George Haugen commenced an action against Otto Schlimme for property damage and personal injuries. Schlimme brought the Dick Thayer Motor Company into the action as a third-party defendant, claiming that the car he was driving was the property of the Thayer company. Answers and cross-claims were filed, and all of the actions were consolidated for trial.

The plaintiffs Henry Haugen and Cleo Okeson recovered substantial verdicts against the defendants Schlimme and the Dick Thayer Motor Company. By a special verdict the jury found that George Haugen was guilty of negligence, but an interrogatory as to whether or not his negligence was a proximate cause of the accident was answered by the jury in the negative. The jury found by a special verdict that the Dick Thayer Motor Company was the owner of the car driven by Schlimme.

Various post-trial motions were made, as a result of which the trial court, contrary to the verdict of the jury, determined (a) that George Haugen was negligent as a matter of law and that the other plaintiffs were entitled to judgment against drivers of both automobiles, as well as the Dick Thayer Motor Company; and (b) that the evidence sustained the finding of the jury that the Dick Thayer Motor Company was the owner of the automobile which the defendant Schlimme was driving when the accident happened.

On this appeal two principal questions are presented: (1) Did the court err in granting judgment notwithstanding the verdict against the defendant George Haugen, and (2) does the record support a finding

to the effect that at the time of the accident the Dick Thayer Motor Company was the owner of the automobile driven by the defendant Schlimme?

The accident giving rise to these actions occurred on April 5, 1955, at about 3:30 p. m. at an intersection of County Aid Road No. 8 and County Aid Road No. 9 in Big Stone County. Haugen entered the intersection from the south on County Aid Road No. 9, which runs north and south, while Schlimme entered the intersection from the east on County Aid Road No. 8, which runs in an east and west direction. The intersection is level; the roads which form it are of hard-surface gravel approximately 24 feet in width and at the time of the accident were dry. The weather was partly cloudy but there was nothing in the air in the form of dust or haze that would reduce visibility. The roads are of equal importance, and the traffic on neither is controlled by a stop sign. There are crossroad signs on each road leading to the intersection.

It is important to examine the existing conditions at and near the intersection as they bear upon the opportunity of George Haugen to view oncoming traffic from the east, the direction from which the Schlimme car was approaching the intersection. It should be noted that a farmhouse was located at a point approximately 390 feet south of the intersection on County Aid Road No. 9. It appears from the record and exhibits that there was a row of trees along the easterly right-of-way line of County Aid Road No. 9 and a similar row of trees growing along the southerly right-of-way line of County Aid Road No. 8. These trees were variously described as being anywhere from 5 to 6 inches in diameter to 12 to 15 inches in diameter and were spaced at a distance of 20 to 25 feet apart. These trees were bare; they had not as yet acquired their new leaves. The defendant George Haugen testified that a person approaching the intersection from the south would have no difficulty in looking between the trees to the east to see a car or tractor approaching the intersection from that direction.[1] It appears from the record that the

---

[1]Haugen's testimony with reference to the opportunity to see traffic approaching the intersection from the east is as follows:

"Q. These trees were standing out there bare, and as you drove north

Haugen vehicle entered the intersection at approximately 25 m. p. h. After it entered the intersection, it was struck on the right side by the front end of the Schlimme vehicle and was damaged from the center of the right front door to the rear of the vehicle. Both vehicles came to rest in the ditch north and west of the intersection.

It appears from the record that as Haugen approached the intersection he looked to the east but did not see any cars approaching from that direction. Neither did he see any cars approaching from the north or the west. After clearing the farmhouse, which was about 390 feet south of the intersection, there was nothing in his line of vision, other than a row of trees, which interfered with his view. He said he would have been able to see a car or tractor approaching from the east. Except

_____

into this intersection, the road coming from the east was about the same elevation as the road you were traveling, wasn't it?

"A. Yes.

"Q. And were there any trees to the south of this road that runs east and west?

"A. Yes, there were.

"Q. And how many?

"A. I do not know how many.

"Q. They were very scarce, weren't they?

"A. Yes, there wasn't too many.

"Q. Pardon?

"A. Yes, there wasn't too many.

"Q. And they were small, is that right?

"A. Yes.

"Q. And then someone has said something about a house being located somewhere in that neighborhood south of the road?

"A. Yes.

"Q. And to your east, is that right?

"A. Yes.

"Q. That house is back some distance from the intersection, isn't it?

"A. Yes, it is.

"Q. Somebody said about a quarter of a mile, is that the way you remember it?

"A. No, it isn't that far.

"Q. How far would you say it was?

"A. I'd say about 350 feet.

"Q. About 350 feet?

for the trees, Haugen's view was unobstructed for approximately a quarter of a mile to the east. The row of trees along the east line of County Aid Road No. 9 did not extend completely to the intersection but ended approximately 35 feet south of the southerly right-of-way line of County Aid Road No. 8. Therefore, at a distance of 35 feet from the intersection, Haugen had a completely unobstructed view to the east. However, Haugen testified that he did not see the Schlimme vehicle at any time prior to the collision and, in fact, he did not know from what direction the Schlimme vehicle had come. At no time did Haugen apply his brakes, although he testified they were in good condition, and he estimated that he could have stopped within a distance of 35 to 40 feet had he been required to do so.

---

"A.   Yes.

"Q.   South of the intersection?

"A.   Yes.

"Q.   And then as you get south of the house, there is nothing else to interfere with the vision to your right or to the east, is there?

"A.   There are some trees further south of the house.

"Q.   Of the house?

"A.   Yes.

"Q.   What kind of trees are those?   .

"A.   Boxelders.

"Q.   Are they large or small?

"A.   Small.

"Q.   And are there many?

"A.   Not too many, no.

"Q.   And they are how far apart?

"A.   About the same distance.

"Q.   About twenty-five feet?

"A.   Yes.

"Q.   And they were bare too?

"A.   Yes.

"Q.   So as you drove north that afternoon, as you were driving north, the view to the right was not obstructed aside from these little trees, that is true, isn't it?

"A.   Yes.

"Q.   And then as you reached a point opposite this house, there would be a smaller area in there that the house would obstruct, that is true, isn't it, but from the house north, there was nothing between you or anyone

It appears from the record that the defendant Schlimme, who had the benefit of the statutory right-of-way, entered the intersection at approximately 45 m. p. h. He had been driving in excess of that rate prior to that time and reduced his speed as he approached the intersection. He testified that he looked toward his left (south), the direction from which the Haugen car was approaching, when he was approximately 325 feet east of the intersection. He saw no car approaching from the south. He then turned his attention to the north where a grove of trees on the northeast corner of the intersection almost totally obstructed his view to the right. Thereafter he looked straight ahead and, at the moment of entering the intersection, he saw the Haugen vehicle enter the intersection from the left and appear in front of him. He applied his brakes but was unable to avoid a collision.

By its special verdict the jury found that Otto Schlimme was negligent and that his negligence was a proximate cause of the accident. They also found that George Haugen was negligent but that his negligence was not a proximate cause of the accident. The trial court, however, granted judgment notwithstanding the verdict against George Haugen, being of the view that the special verdict of the jury was inconsistent and contrary to proven facts. The question arises on the state of the record whether the trial court was right in determining, as a matter of law, that the negligence of George Haugen was a proximate cause of the accident.

■ The appellant George Haugen recognizes the basic Minnesota rule that "Consequences which follow in unbroken sequence, *without an intervening efficient cause,* from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow." (Italics supplied.)[2] He contends, however, that the

---

else driving along that highway that would interfere with the vision to the right or to the east, would it?

"A.   No, not excepting those trees.

"Q.   Yes, but you had no difficulty seeing between these trees, if anyone had been looking, that is true, isn't it?

"A.   Well, you could see through them, yes."

[2]Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641.

alleged excessive speed of the defendant Schlimme was a "primary" or intervening efficient cause which broke the chain of causation between his own negligence and the resulting collision. He contends, in other words, that Schlimme's "primary" negligence absolves him from liability growing out of his failure to maintain a proper lookout and to yield the right-of-way.

In support of his contentions the appellant George Haugen points to evidence of the excessive speed of the Schlimme vehicle; the fact that the greatest impact was received by the Haugen vehicle in the rear of the right front door; that it was the Schlimme machine which hit the Haugen car and not the other way round; and that George Haugen entered the intersection first. He asserts this evidence establishes that the negligence of Schlimme was a distinct and unrelated cause not concurrent with any act of his so as to make his negligence a proximate cause of the accident.

We think the statement contained in the recent case of Lee v. Lee, 248 Minn. 496, 500, 80 N. W. (2d) 529, 533, is applicable here. We said there:

"* * * Stated more fully, an act or omission of a second tortfeasor (or actor), as a matter of law, cannot constitute an efficient intervening cause which breaks the chain of causation between the negligence of the original tortfeasor and the resulting accident or collision, when such act or omission occurs so near in time to the happening of the accident or collision that it cannot possibly, in the remaining time interval, have found expression either to stop or break the natural sequence and progression of the original tortfeasor's negligence as a proximate cause."

It appears from an examination of the record that both cars entered the intersection almost simultaneously, which compels the conclusion that the failure of Haugen to maintain a proper lookout and to yield the right-of-way was as much a cause of the accident as the speed of the Schlimme car. In Moore v. Kujath, 225 Minn. 107, 112, 29 N. W. (2d) 883, 886, 175 A. L. R. 1007, 1011, a case involving a similar intersection collision, this court said:

"* * * the driver on the left, even though he may reach the intersection first, * * * [must] yield the right of way to the driver on the right

in a situation where the two vehicles would collide were each to continue its course and maintain its rate of speed. To otherwise interpret the law and to arbitrarily give to him who first enters the intersection the right of way over another vehicle approaching at approximately the same time from the right would be to increase rather than diminish the hazards of driving."

Therefore the question becomes, as in the Moore case, whether as a matter of law Haugen was excused from yielding the right-of-way by virtue of the fact that he did not see the Schlimme car approaching the intersection. In considering this question the court must give consideration to all of the surrounding circumstances. Moore v. Kujath, *supra*.

Upon clearing the house, which was 390 feet south of the intersection, Haugen had a relatively unobstructed view to the east. He could see a quarter of a mile in that direction. Assuming the Schlimme vehicle was approaching the intersection at 60 m. p. h., he would have been in view a sufficient length of time to avoid the collision. Haugen's view to the southwest corner of the intersection was completely unobstructed. The trees to the right did not interfere with his opportunity to see the Schlimme car as it approached from the east. We are of the view that reasonable men could not differ on the question of whether Haugen should have seen the Schlimme vehicle since it must have been in full view of Haugen during his entire approach to the intersection. Not only was Haugen familiar with the intersection, but he should have given more than normal attention to it in view of the fact that vehicles approaching from the right had the right-of-way.

Under comparatively similar situations, where plaintiff drivers entered intersections without maintaining a proper lookout, they have been held negligent as a matter of law under circumstances where there were no distracting circumstances. See, Hermanson v. Switzer, 188 Minn. 455, 247 N. W. 581; Gotzian v. Wolk, 201 Minn. 38, 275 N. W. 372.[3] See,

---

[3]This was a case where plaintiff motorist, who claimed to have looked both to his right and left before entering street intersection at which his view was not obstructed (there being no distracting circumstances) but who failed to observe defendant's automobile until it was only 10 feet away, was held, as a matter of law, contributorily negligent precluding recovery.

also, Dreyer v. Otter Tail Power Co. 205 Minn. 286, 285 N. W. 707, 287 N. W. 13, where it was held that a party was chargeable with contributory negligence as a matter of law in that, in daylight, he drove his automobile into an intersection of two graveled and well-traveled highways without knowing that he was approaching a crossroad. The court observed that there was nothing to impede or restrict his view so as to excuse him from the duty of care always required of the driver of an automobile. In Moore v. Kujath, 225 Minn. 107, 115, 29 N. W. (2d) 883, 887, 175 A. L. R. 1007, 1012, we said:

"* * * the mere failure on the part of one who looks and does not see that which is in plain sight and which he might have seen does not in itself make him guilty of contributory negligence as a matter of law *without regard to surrounding circumstances.*"

And in Martin v. Reibel, 227 Minn. 106, 34 N. W. (2d) 290, we pointed out that the "look-and-not-see-that-which-is-in-plain-sight rule" must always be tempered with a consideration of surrounding circumstances as to conditions which may have interfered with the party's ability to fully observe the intersection. See, also, Johnson v. Mancilman, 241 Minn. 461, 466, 63 N. W. (2d) 569, 572.

In considering the circumstances giving rise to the collision, the trial court could not ignore the importance of Haugen's admission that at no time before the collision did he see the Schlimme automobile. This testimony, in light of the fact that there was nothing which would interfere with his opportunity to have an adequate view to the east either by way of obstructions or distracting circumstances, compels the conclusion that Haugen blindly entered the intersection without having made an observation as to whether it was safe for him to proceed. It must also follow that his conduct in entering the intersection without employing his normal faculties to observe existing hazards was conduct which was negligent and a proximate cause of the damage.

In Moores v. N. P. Ry. Co. 108 Minn. 100, 101, 121 N. W. 392, and again in Robinson v. Butler, 226 Minn. 491, 495, 33 N. W. (2d) 821, 823, we said:

"* * * Theorize as we may on the subject of proximate cause, it is in

its last analysis a question of good common sense, to be solved by a practical consideration of the evidence in each particular case."

We think the trial court was right in coming to the conclusion that Haugen's failure to maintain a proper lookout and yield the right-of-way contributed to the accident, irrespective of the speed of the Schlimme vehicle. If Haugen's negligence contributed to the happening of the event, it is a proximate cause for which he is legally responsible. If Haugen had exercised his normal faculties of observation and had yielded the right-of-way, as he was under obligation to do, the accident would never have occurred.

■ We move now to a consideration of the appeals of the Dick Thayer Motor Company from the judgments entered after the district court denied its motion for judgment notwithstanding the verdict or in the alternative for a new trial. This motion was based upon the grounds that the finding of the jury that the company was the owner of the automobile driven by Schlimme was not justified by the evidence. Prior to April 1, 1955, Otto H. Schlimme was the owner of the 1954 Ford which was involved in the accident. In March of 1955 Schlimme entered into negotiations with the Dick Thayer Motor Company for the purchase of a new automobile. It appears to have been Schlimme's practice to trade in his automobile and purchase a new one each year. From the exhibits it appears that this practice was followed in 1953, 1954, and 1955 in trades with the Dick Thayer Motor Company. From an order form signed by both Schlimme and Thayer it appears that on April 1, 1955, it was agreed that Schlimme would turn in his 1954 Ford as part consideration for a new 1955 Ford V-8 custom 2-door. The order form describes the new car to be delivered to Schlimme with reference to equipment, accessories, and color. The order form provides for a cash difference of $500. The new car was to be delivered as soon as possible. After the agreement for the purchase of the new car was entered into, Schlimme delivered to the Dick Thayer Motor Company the registration certificate and signed the bill of sale form on the reverse side, leaving the name of the purchaser blank. This certificate was retained by the Thayer company until after the accident occurred. After delivering the registration card to Thayer, Schlimme reported the transaction to the

insurance agent who carried his public liability insurance and told him to do whatever was necessary. It was agreed that Schlimme should continue to use the 1954 automobile until the new car was delivered. At no time did the Thayer company have actual possession of this car.

The question of ownership of the 1954 Ford was submitted to the jury in the form of a special interrogatory upon which they found the Dick Thayer Motor Company to be the owner.

Title to personal property passes as of the time the parties intend that it should pass. M. S. A. 512.18 and 512.19; 17 Dunnell, Dig. (3 ed.) § 8511; 46 Am. Jur., Sales, § 413. The intent of the parties is determined objectively from the acts and conduct of the parties at the time of the occurrence which it is alleged gave rise to the intention to pass title, Rotterman v. General Mills, Inc. 245 Iowa 229, 61 N. W. (2d) 718; 12 Am. Jur., Contracts, § 227; as well as from the terms of the contract, usages of trade, and circumstances of the case. M. S. A. 512.18(2). In examining the objective conduct of the parties to determine intent, the entire arrangement between them must be examined. Holmes v. Lilygren Motor Co. Inc. 201 Minn. 44, 275 N. W. 416.

Nowhere does it appear from a careful examination of the record that there existed an express agreement between the parties with respect to the use, dominion, or control of the 1954 Ford automobile. Schlimme testified that he understood he could use the 1954 car until the new car arrived unless Thayer called it in before that time. However, this appears to be a unilateral understanding on the part of Schlimme, as the record does not disclose any such agreement, nor does the testimony of Richard Thayer reveal that he so understood the agreement. Thayer's testimony is not satisfactory on the issue of ownership. When asked the reason why Schlimme delivered the registration card to him he said, "I don't believe there was any reason given."

Thayer company contends, however, that the title remained in Schlimme by virtue of the fact that Schlimme retained the physical possession and control of the vehicle, coupled with the fact that under M. S. A. 168.15 the title was prima facie in Schlimme. Although it is true that prima facie title remained in Schlimme due to the fact that the vehicle was still registered in his name, such evidence is not conclusive

as to the question of title. Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637; Moberg v. Commercial Credit Corp. 230 Minn. 469, 42 N. W. (2d) 54. In the latter case we said (230 Minn. 477, 42 N. W. [2d] 59):

"* * * While registration does not determine or affect title (Bolton-Swanby Co. v. Owens, 201 Minn. 162, 275 N. W. 855), it is prima facie, but not conclusive, evidence of title in the party in whose name the car is registered. Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582."

From an examination of the authorities it appears that, because of the many factors which bear on the question of intent, each case involving the question of ownership of personal property must be decided on its particular facts. From these authorities it appears that the question of ownership is usually for the trier of fact and its finding will not be disturbed if the evidence reasonably tends to support it. Holmes v. Lilygren Motor Co. Inc. 201 Minn. 44, 275 N. W. 416; Bolton-Swanby Co. v. Owens, 201 Minn. 162, 275 N. W. 855; Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582; Krinke v. Timm, 211 Minn. 510, 1 N. W. (2d) 866; Moberg v. Commercial Credit Corp. 230 Minn. 469, 42 N. W. (2d) 54; Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637; Frye v. Anderson, 248 Minn. 478, 80 N. W. (2d) 593. In Frye v. Anderson, *supra,* we reversed and granted a new trial where the lower court had directed a verdict in favor of the defendant. That case involved the ownership of a truck registered in the name of the defendant but used by his son in an ash-hauling business. The evidence as to ownership was conflicting. In granting a new trial we said (248 Minn. 495, 80 N. W. [2d] 604):

"* * * the question as to the ownership of the truck at the time of the accident * * * was for the jury.

"It was therefore error to direct a defendant's verdict."

A retention of possession and use of an automobile is merely one of the factors which determines intent and is not conclusive. In Bolton-Swanby Co. v. Owens, 201 Minn. 162, 275 N. W. 855, a dealer had given possession of a vehicle to a Mrs. Schiller. The title of the car was

assigned to her and registered in her name. Mrs. Schiller then signed the bill of sale on the back of the registration card in blank and left it with the auto dealer. This procedure was followed for several years until a creditor of Mrs. Schiller had the sheriff seize the car under a levy of execution. On appeal, in an action brought by the dealer in which the jury found that he was the owner of the car, we said (201 Minn. 164, 275 N. W. 857):

"* * * Registration does not determine or affect title. The purposes of the act are taxation and identification of automobiles, having no regard to vendees of the person holding the registered title * * *. The purpose is not to determine and establish title by registration. It is the vehicle and not the title which is registered. * * *

\* \* \* \* \*

"Plaintiff is not estopped to claim ownership of the car because it invested Mrs. Schiller with possession and indicia of ownership."

Particularly pertinent with respect to the question of ownership is the testimony of Thayer on cross-examination. Thayer testified that Schlimme did not have the cash to make a deposit on a new automobile and in such cases he required purchasers to bring in the title card to the old automobile. He testified as follows with reference to the signing of the title card:

"Q.   You do require them to be signed, don't you?

"A.   Not necessarily, not until the trade takes place, when the trade does—

"Q.   Well, you required this one to be signed, didn't you?

"A.   I don't recall.

"Q.   Well, it was signed?

"A.   Yes, it is signed.

"Q.   And you ordinarily don't require that until a trade takes place, isn't that right, Mr. Thayer?

"A.   Right."

Although Thayer company contends that the provisions on the back of the purchase order negate any intent to pass title of the 1954 Ford until the new car was delivered, we are of the view that on the state of

the record the jury could reasonably find that the parties intended title to pass upon consummation of the deal on April 1. Schlimme testified that his deals with Thayer were always closed by turning in his old car and payment of an agreed cash balance, without reappraisal for any depreciation on the old car between the date of the transaction and the delivery of the new car. The trial court submitted the issue of ownership of the 1954 car to the jury under proper instructions to which no exceptions were taken.[4]

Concededly the question of ownership in this case is close. The evidence is not clear-cut and is conflicting. We are of the view, however, that on the state of the record the jury could have found that title to the 1954 automobile passed to the Thayer company by the act of Schlimme in signing and delivering to Thayer in blank the registration card to the 1954 Ford, with Thayer's implied consent that Schlimme might continue to use the car until the new car was delivered. Similarly, due to the fact that Thayer possessed the title registration card signed in blank, the jury could have found that he had power to sell it before the new car arrived, thus requiring Schlimme to give up the old car upon Thayer's

---

[4]Instructions of the court: "No. 5, 'Who was the owner of the automobile which Otto Schlimme was driving when the accident happened?' There is a dispute here between the defendant, Otto Schlimme, and the third party defendant, Dick Thayer Motor Company, as to who owned the automobile which Mr. Schlimme was driving at the time this accident happened, and it is for you to say from all of the evidence in the case who was the owner of the car, and in that connection, you should keep in mind that there was a trade in progress between Mr. Schlimme and the motor company. The question is whether title to this car had passed from Mr. Schlimme to the company. And you are instructed on that point that where a deal like this is being made, title passes ordinarily when the parties intend that it should pass. So you should consider all of the evidence in this case and determine what the intention of the parties was as determined from what they did. You should consider all of the evidence, both oral and written, bearing upon that point and determine whether this automobile on the 5th of April in 1955 was the property of the Thayer Motor Company, or of Otto Schlimme. Consider everything that was done, everything that was said, and all the written evidence you have and determine that question. You will answer it either by writing in the name of Otto Schlimme, or the Dick Thayer Motor Company."

request.

In viewing the evidence with respect to the ownership of the 1954 Ford we must consider the evidence in the light most favorable to the verdict. Moreover, a verdict of the jury will not be set aside unless it is manifestly and palpably contrary to the evidence as a whole. Solosky v. J. A. Johnson Co. 223 Minn. 390, 27 N. W. (2d) 282; Thelen v. Gartner, 226 Minn. 36, 31 N. W. (2d) 639; Barnes v. Northwest Airlines, Inc. 233 Minn. 410, 47 N. W. (2d) 180.

■ The defendant Thayer company sought to impeach the testimony of Schlimme by showing that subsequent to the accident he had admitted being the owner of the 1954 Ford. It attempted to establish this fact by a letter dated May 25, 1956, addressed to Dick Thayer Motors by the Department of Highways, which letter contained the names and addresses of those involved in the accident and, with reference to Schlimme, contained the following notation: "driver-owner-inj." The trial court sustained an objection to the introduction of this letter on the ground that the information relating to the ownership of the automobile was privileged by M. S. A. 169.09, subd. 13. This statute relates to accident reports maintained by the highway department and makes such reports privileged except for information relating to the names and addresses of persons involved in the accident. A full discussion as to the application of this statute is contained in Garey v. Michelsen, 227 Minn. 468, 35 N. W. (2d) 750, and Rockwood v. Pierce, 235 Minn. 519, 51 N. W. (2d) 670. The court properly sustained the objection on the further ground that there was no foundation as to the source of the information contained in the report on file with the State Highway Department. It is clear, however, that the information as to ownership of the vehicle which Thayer company sought to establish by this report was obtained directly from the records of the State Highway Department, and, since the statute permits divulgence of no more than names and addresses of persons involved in the accident, such information was consequently privileged.

Affirmed.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.