ANNE G. LARSON v. EARL L. MONTPETIT.

147 N. W. (2d) 580.

December 23, 1966—No. 40,076.

*Nahurski & Cyptar,* for appellant.

*Altman, Geraghty & Mulally* and *Kenneth M. Schadeck,* for respondent.

SHERAN, JUSTICE.

Appeal from an order of the district court denying plaintiff's motion for judgment notwithstanding the verdict or a new trial.

On August 12, 1962, at about 1:30 a. m. a collision occurred between a southbound vehicle owned and operated by plaintiff, Anne G. Larson, and one owned by defendant, Earl Montpetit, which was parked facing in a southerly direction on White Bear Avenue in the village of Maplewood. In an action for recovery of the resulting damage, the case was submitted to a jury, which returned this special verdict:

"1. At or just prior to the collision, was plaintiff Anne G. Larson negligent with respect to the operation of her automobile?

"Answer Yes or No: No.

\* \* \* \* \*

"3. At or just prior to the collision, was defendant Earl L. Montpetit negligent with respect to the parking of his automobile?

"Answer Yes or No: Yes.

"4. If the answer to Number 3 is 'Yes,' was his negligence a direct cause of the collision?

"Answer Yes or No: No."

The trial court by its order for judgment confirmed the verdict and post-trial motions were denied. The basic issue on appeal is whether the jury, having absolved plaintiff from negligence, was justified in finding the negligence of defendant not to have been a direct cause of the collision.

■ The place of the accident was in front of the Henry J. Belisle residence. At this point, White Bear Avenue extends in a general northerly and southerly direction and is not illuminated by street lights. The traveled portion consists of two 9- to 10-foot strips divided by a painted

centerline. The surface is tarvia and for at least a block in both directions from the accident site is straight and level.

At the time of the collision Montpetit's car was parked facing south on White Bear Avenue in front of the Belisle residence so that approximately one-half of the car's width extended into the southbound lane of the street.[1] There was no curb on the roadway. The shoulder on the west side of White Bear Avenue and in front of the Belisle home was narrow.

The only justification Montpetit advanced for having parked on the traveled portion of the street was that about 5 minutes before the collision he had backed his car out of Belisle's private driveway to accommodate the driver of another car who, like himself, had been a guest during the course of the evening at the Belisle home. His intention was to leave also as soon as his wife came from the house to the car. Although he had expected her to come out immediately, she did not. After waiting for several minutes, defendant left his car parked in the manner described and was in the process of walking back to the host's home in search of his wife when the accident happened. There was no reason for leaving the car illegally parked rather than pulling it back into the driveway where it had been before. In our judgment Montpetit's attempted justification for the improper parking was inadequate as a matter of law.[2] In addition, conflicting evidence as to whether Montpetit's parking lights[3] were on when he left the car partially on the traveled portion of White Bear Avenue made the jury finding of negligence on his part clearly correct.

---

[1] Minn. St. 169.35, subd. 2, provides: "Upon streets and highways not having a curb each vehicle stopped or parked shall be stopped or parked parallel with and to the right of the paved or improved or main traveled part of the street or highway."

[2] See, Lynghaug v. Payte, 247 Minn. 186, 76 N. W. (2d) 660, 56 A. L. R. (2d) 1090; Christopherson v. Custom Laundry Co. 179 Minn. 325, 229 N. W. 136; Restatement, Torts (2d) § 288 B.

[3] Minn. St. 169.53 provides in part: "When a vehicle is parked or stopped upon a highway or shoulder adjacent thereto during the times when lighted lamps on vehicles are required, it shall be equipped with one or more lamps which shall exhibit a white or amber light * * * to the front of the vehicle and a red light * * * to the rear * * *."

As Montpetit was about to reenter the Belisle house, plaintiff approached the accident site from the north. She testified that she was unable to see Montpetit's car because she was blinded by the lights of a northbound vehicle which, traveling at approximately the same speed as she, came abreast of her at about the time she reached defendant's car. Her attention diverted by the "weaving" movement of the approaching vehicle and her vision obscured by its lights, she did not see defendant's car until she collided with it as she drove south in her own lane of travel. The front right portion of her car came into contact with the left rear portion of Montpetit's vehicle. It is clear that if Montpetit had parked his car in the driveway, as he should have done when he returned to the Belisle house, the collision would never have occurred.

With these facts in mind, the question is: How can it be said that there is an absence of causal relationship between defendant's negligence in obstructing the lane of travel in which plaintiff was proceeding and this collision if it be true, as the jury found, that plaintiff was exercising reasonable care in the operation of her car and her failure to see defendant was not attributable to fault on her part?

Defendant suggests that the answer, based upon instructions submitted by the trial judge to which plaintiff has taken exception at all relevant stages of the proceeding, is the doctrine of superseding cause. In this connection, the jury was instructed:

"* * * [D]irect cause may be defined as follows: A direct cause is simply a cause which had a substantial part in bringing about the collision and damages.

"* * * [A] cause is not a direct cause when there is a superseding cause. For a cause to be superseding cause all the following elements must be present: (1) Its harmful effects must have occurred after the original negligence; (2) It must not have been brought about by the original negligence; (3) It must actively work to bring about a result which would not otherwise have followed from the original negligence; and (4) It must not have been reasonably foreseeable by the original wrongdoer."

In our judgment the fact that vehicles would meet on White Bear

Avenue at approximately the place where defendant had parked his car and that the vision of one of the drivers would be hampered by the bright lights of the other so as to prevent observation of the improperly parked car of the defendant was foreseeable as a matter of law.[4] On the present record, having found plaintiff not negligent, the jury could not reasonably find lack of causation between the presence of defendant's car in plaintiff's lane of travel and the collision. It is conceivable that the jury in some situations could find the lights on an approaching car to have been so *extraordinarily* bright and its movement so unusually erratic as to be unforeseeable and attribute the accident to these unique characteristics of the collision situation.[5] But as we read the present record there is no adequate evidence here supporting such a theory.

---

[4] We recognize that the question of proximate cause is usually a jury issue. Pluwak v. Lindberg, 268 Minn. 524, 130 N. W. (2d) 134; Willmer v. Wallinder Sash & Door Co. 224 Minn. 361, 28 N. W. (2d) 682. But in certain cases a holding as a matter of law that there was no intervening cause is proper. Haugen v. Dick Thayer Motor Co. 253 Minn. 199, 91 N. W. (2d) 585; Arnold v. Northern States Power Co. 209 Minn. 551, 297 N. W. 182. Since a defendant may not be relieved of liability by an intervening cause which could reasonably be foreseen, Johnson v. Scully Const. Co. 255 Minn. 41, 95 N. W. (2d) 409; Peterson v. Richfield Plaza, Inc. 252 Minn. 215, 89 N. W. (2d) 712; Crawford v. Woodrich Const. Co. 239 Minn. 12, 57 N. W. (2d) 648; Eichten v. Central Minn. Co-op. Power Assn. 224 Minn. 180, 28 N. W. (2d) 862; Restatement, Torts (2d) § 447; Prosser, *The Minnesota Court on Proximate Cause,* 21 Minn. L. Rev. 19, 39, the issue of superseding cause should not be submitted to the jury unless there might be a reasonable difference of opinion regarding the foreseeability of the intervening act. Strobel v. Chicago, R. I. & P. R. Co. 255 Minn. 201, 96 N. W. (2d) 195.

[5] The jury may find an act to be a superseding cause when it is so extraordinary as to be unforeseeable. Pluwak v. Lindberg, 268 Minn. 524, 130 N. W. (2d) 134. This degree of extraordinariness may be found in the negligence of a driver who sees an obstruction in time to avoid collision therewith and nevertheless strikes the obstruction. Barrett v. Nash Finch Co. 228 Minn. 156, 36 N. W. (2d) 526; Seward v. Minneapolis St. Ry. Co. 222 Minn. 454, 25 N. W. (2d) 221. It may also be found where, although there is no direct evidence that the driver saw the obstruction, he would have had to be extraordinarily negligent not to have seen it. Dahling v. Dammann, 251 Minn. 171, 87 N. W. (2d) 25; Kedrowski v. Czech, 244 Minn. 111, 69 N. W. (2d)

Given the instruction on superseding cause without a counterbalancing instruction on concurring cause,[6] the jury apparently excused the negligence of defendant by its answer to Question 4 merely because plaintiff through no fault of her own became blinded by the lights of the northbound vehicle at a point in time after defendant left his car on the highway. Plaintiff having taken appropriate exception to the submission of the instructions on superseding cause to the jury and having reasserted her position in this regard on appeal, a new trial must be ordered to cure what, on the present record, is a perverse verdict.

Arguably the disposition here should be an order directing the trial court to enter judgment notwithstanding the verdict. However, we are somewhat hesitant to say that the jury's verdict on the issue of plaintiff's negligence could not have been affected by its erroneous views as to whether defendant's negligence was a proximate cause of the damage. We feel that under the circumstances of this case a new trial more properly serves the interests of justice.

■ Since a new trial is necessary, we will discuss another point the

---

337; cf. Ondrachek v. Kettner, 256 Minn. 297, 98 N. W. (2d) 91. In extreme cases it has even been held that an intervening act was unforeseeable as a matter of law. See, Goede v. Rondorf, 231 Minn. 322, 43 N. W. (2d) 770 (cause so extraordinary that, even with hindsight, it was not understood how the accident could have occurred); Robinson v. Butler, 226 Minn. 491, 33 N. W. (2d) 821 (after defendant's negligent passing caused plaintiff to pull off on right shoulder, where plaintiff had full control of car, plaintiff's passenger negligently grabbed the wheel and caused car to go into the left ditch); Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788 (driver saw parked truck in his lane when over ¼ mile from it, realized he was rapidly closing distance between himself and truck, but nevertheless failed to avoid collision by either stopping or turning into unobstructed lane); Sims v. Hallett Const. Co. 247 Minn. 339, 77 N. W. (2d) 54 (driver who had ample time to stop after seeing car in front of him stop, but failed even to appreciably slow down before collision).

[6] The importance of giving an instruction on concurring cause whenever one on intervening cause is given is illustrated in Pluwak v. Lindberg, 268 Minn. 524, 130 N. W. (2d) 134. The comment accompanying Minnesota Jury Instruction Guides, Instruction 141, states that the concurring-cause instruction should be given if superseding cause is an issue.

parties have argued here which may arise upon retrial. One of the fact issues in this case was whether defendant's parking lights were on at the time of the collision. One of plaintiff's witnesses who had been employed as a police officer by the village of Maplewood at the time of the accident testified upon direct examination that when he arrived at the scene shortly after the accident defendant's parking lights were off. Upon cross-examination a copy of an accident report submitted to the Department of Highways as required by Minn. St. 169.09, subd. 8, was presented to him. Upon his acknowledgment that a signature demonstrated thereon was his, the report was offered and received in evidence. Later, after argument by plaintiff's counsel that this report was copy of a report rendered inadmissible by § 169.09, subd. 13, the trial judge directed that the report be withdrawn from evidence, reasoning:

"* * * The court has decided that it would be improper to allow the document as a piece of evidence to be submitted to the jury and to accompany the jury during its deliberations, for more than one reason, but suffice it to say the material or the exhibit does contain hearsay material and does contain other objectionable material."

In the meantime, although the jury had not been permitted to see the report, the witness had been impeached with it when he acknowledged that the report stated defendant's parking lights had been on. We have some doubt as to the efficacy of this attempted impeachment in view of the witness' testimony that he had no part in preparing the report and of the receipt in evidence of notes the witness made shortly after investigating the accident reflecting his observation upon arriving at the scene that the parking lights on defendant's car were not on. Nevertheless, defendant's attorney was allowed, over plaintiff's objection, to argue with respect to this witness:

"* * * [H]e was the investigating officer and he signed his name to a report in which he * * * says the Plymouth was parked with the left wheels on the pavement, parking lights on."

Plaintiff asserts that thus allowing the copy of the accident report to be used for impeachment of the witness was prejudicial error in light of § 169.09, subd. 13, which provides in part:

"All required accident reports and supplemental reports shall be without prejudice to the individual so reporting and shall be for the confidential use of the department for accident prevention purposes, except that the department or any law enforcement department of any municipality or county in this state shall, upon written request of any person involved in an accident * * * disclose to such requester, [or] his legal counsel * * * any information contained therein except the parties' version of the accident as set out in the written report filed by such parties. No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident, except that the department shall furnish upon the demand of any person who has, or claims to have, made such a report, or, upon demand of any court, a certificate showing that a specified accident report has or has not been made to the department solely to prove a compliance or a failure to comply with the requirements that such report be made to the department. * * *

"Nothing herein shall be construed to prevent any person who has made a report pursuant to this chapter from testifying in any trial, civil or criminal, arising out of an accident, as to facts within his knowledge. It is intended by this subdivision to render privileged the reports required but it is not intended to prohibit proof of the facts to which such reports relate."

The key language is, "No such report shall be used as evidence in any trial * * *." Plaintiff asserts that the antecedent of "such report" is the phrase which opens the first sentence, "All required accident reports and supplemental reports." Defendant contends that it is "written report filed by such parties," which ends the first sentence and thus immediately precedes the language in question. Either construction appears acceptable as a matter of grammar.

Thus the choice must depend upon construction in light of the other language in the statute and of its evident purpose.

It is clear that the purpose of the accident report privilege is to induce persons involved in accidents to candidly report them so that the Highway Department may use information about accidents to improve enforcement and safety measures so as to prevent their recurrence. This rationale has no application in the present case where the evidence sub-

mitted was from an accident report made by police officers, not by a person involved in an accident,[7] and where the information reported derived from the officer's own observation rather than from a statement of a person involved given pursuant to an officer's completion of an accident report.[8]

In light of the fact that evidentiary privileges constitute barriers to the ascertainment of truth and are therefore to be disfavored and narrowly limited to their purposes,[9] it would be amiss for this court to interpret a statute creating such a privilege in such a way as to ascribe to the legislature an intention to create a privilege going far beyond the statute's purpose when there is available an equally plausible construction which will create a privilege which, although narrower, nevertheless serves the statute's purpose.

This result finds support in the statute's provision, "It is intended by this subdivision to render privileged the reports required * * *." The

---

[7] Contrast Haugen v. Dick Thayer Motor Co. 253 Minn. 199, 91 N. W. (2d) 585.

[8] It may be noted that the statute has been held to allow such an officer to testify to, as matters within his knowledge, admissions a party has made to such officer pursuant to the officer's completion of an accident report. See, Rockwood v. Pierce, 235 Minn. 519, 51 N. W. (2d) 670; Garey v. Michelsen, 227 Minn. 468, 35 N. W. (2d) 750.

[9] 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2192, p. 72, states: "From the point of view of society's *right* to our testimony, it is to be remembered that the demand comes, not from any one person or set of persons, but from the community as a whole—from justice as an institution and from law and order as indispensable elements of civilized life. * * * The pettiness and personality of the individual trial disappear when we reflect that our duty to bear testimony runs not to the parties in that present cause, but to the community at large and forever.

"It follows * * * that *all privileges of exemption from this duty are exceptional,* and are therefore to be discountenanced. There must be good reason, plainly shown, for their existence. * * * The investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges. They should be recognized only within the narrowest limits required by principle. Every step beyond these limits helps to provide without any real necessity, an obstacle to the administration of justice."

statute speaks of a "privilege," not a "disability," such as the husband-wife testimonial disability. If the statute were construed to cover accident reports submitted by nonparties, the privilege would be possessed by the person who prepared the report,[10] here the police officer. This would mean that only the officer, and not the plaintiff, could invoke the privilege.[11] No reason appears for a nonparty to possess the right to thus withhold testimony. Furthermore, in the event the officer would claim the privilege, if the trial court overruled his claim and the privileged matter were introduced, the party would have no remedy upon appeal.[12]

---

[10] The first sentence of Minn. St. 169.09, subd. 13, states that the reports "shall be without prejudice *to the individual so reporting.*" (Italics supplied.) In 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2196, it is stated: "The grounds for exemption from the testimonial duty are entirely extrinsic to the purpose of ascertaining the facts under investigation in the trial * * *.

"The exemptions are therefore in no sense provided for the *benefit of the litigant party* whose opponent is deprived by them of the evidence which he desires. They are not intended to secure for him a better likelihood of demonstrating the truth of his cause. * * * It concerns solely the *interests of the witness* in his relation to justice and the state—his interests not to have his testimonial duty enforced against him where paramount considerations of policy prevail over the purpose of judicial investigation."

[11] 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2196, states: "It follows that the *claim of privilege* can be made solely by the *person whose privilege it is.* The privilege (as the common phrasing runs) is purely personal to himself. Whether he chooses to permit disclosure without objection, or whether he prefers to exercise the exemption which the law concedes to him, is a matter resting entirely between himself and the state (or the court as its representative). The *party* against whom the testimony is brought has no right to claim or to urge the exemption on his own behalf."

[12] 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2196, states: "But what if the court *rules improperly* on the claim of privilege? (a) If the ruling *denies the privilege* and compels the witness to testify, there is no legitimate ground for exception by the party against whom the evidence weighs. By hypothesis, the privilege does not exist for the benefit of the party nor for the sake of the better ascertainment of the truth of his cause. The offered testimony is relevant and is, in all other respects than the privilege, admissible. The admission of it, by denying the privilege, has not introduced material which in any way renders less trustworthy the finding of the verdict. On the contrary, only the exclusion of it could have been an obstacle to the ascertain-

Additional support exists in the statute's statement that the reports "shall be without prejudice to the individual so reporting." The fact that it would not be to a police officer's "prejudice" to disclose the contents of a report he has made further indicates it is unlikely the legislature intended to give him a privilege.

Hickok v. Margolis, 221 Minn. 480, 22 N. W. (2d) 850, and Lowen v. Pates, 219 Minn. 566, 18 N. W. (2d) 455, wherein the testimony of police officers based on memoranda made in preparation for reports to the Highway Department was held to be within the statutory privilege, were decided prior to the 1947 amendment[13] of the statute, which stated for the first time that the purpose of the subdivision was to create a privilege, and to the 1959 amendment,[14] which contained the first reference to "the written report filed by such parties." Prior to 1959 the only possible antecedent of "such reports" was "[a]ll required accident reports and supplemental reports."

Haugen v. Dick Thayer Motor Co. 253 Minn. 199, 91 N. W. (2d) 585, is to be distinguished from the problem here involved because the report in that case related information apparently obtained from one of the parties to the accident as distinguished from the independent observations of an investigating officer.

For the foregoing reasons, we conclude that § 169.09, subd. 13, does not bar the use of a portion of a traffic accident report prepared by a police officer reporting facts observed by such officer, as was done in this case. It is not necessary here to determine what matters the privilege in

---

ment of the truth. The only interest injured is that of the privileged person. His remedy—if, as is usually the case, he was a witness—was to refuse to obey and to appeal for vindication if the court had attempted improperly to use compulsory process of contempt."

This view has been accepted in Minnesota in Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. (2d) 688, 44 A. L. R. (2d) 535, where the court stated that the witness' only effective remedy is to refuse to produce the documents or information, since once the privileged matter is produced after objection has been overruled, the question of the correctness of the ruling is moot on appeal.

[13] L. 1947, c. 114, § 1.
[14] L. 1959, c. 679, § 1.

§ 169.09, subd. 13, does cover; it suffices to say we are satisfied it does not cover the matters involved here.

Reversed and new trial granted.