## Greenip v. Dice

*George Weitzman* and *Gus Milides,* for plaintiffs.

*Robert H. Holland,* for defendants.

*Edward C. McCardle* and *William Doyle,* for additional defendants.

GRIFO, *J.,* March 2, 1976—This matter arose out of an automobile and tractor-trailer accident which occurred on the 2nd of May, 1973, on U. S. Route 22 between Bethlehem and Easton, in Northampton County, Pennsylvania. Plaintiffs, Mr. and Mrs. William E. Greenip, the driver and passenger in the automobile, were injured as a result of the accident, and instituted an action in trespass for damages against defendants above-captioned. Defendants filed responsive pleadings and joined plaintiffs, William E. Greenip and Eileen F. Greenip, as additional defendants. The

issue being joined, the matter came on for trial before the Honorable Richard D. Grifo and jury on October 14, 1975. On October 17, 1975, the jury returned verdicts, in favor of plaintiffs totaling $431,218.51 against defendants, Harold E. Dice, McCullough Transportation, Inc., and Reynolds Leasing Company. Defendants filed motions for new trial framing the following two issues as those to be considered by this court en banc:

1. "Did the Trial Court commit prejudicial and fundamental error by refusing to allow defendants to use the official state police accident investigation report prepared by Trooper Charles Patrick McKelvey, witness for the plaintiffs, to impeach Trooper McKelvey's testimony at trial?

2. "Was the verdict excessive in amounts as to both plaintiffs and clearly beyond what the evidence warranted?"

After careful review of the record in the within matter, it appears that defendants' statement of the first issue is somewhat misleading. We therefore find it necessary to review completely the trial court's handling of the issues relative to the use of the accident report at trial.

Prior to the controversy which developed concerning the report, plaintiffs had called as their second witness Trooper Charles Patrick McKelvey. Trooper McKelvey had been the investigating officer at the scene of the subject accident. Plaintiffs' counsel had Trooper McKelvey testify as to, and diagram on a chalkboard, certain "swirl type" skid marks which the trooper observed on the road surface. The trooper indicated that the skid marks led from the right or "slow" lane of the two eastbound lanes on Route 22 in the area of the ac-

cident scene, to the position of plaintiffs' automobile where it came to rest against the center guardrail after the accident. The import of Trooper McKelvey's testimony was that it permitted the jury to infer that the accident occurred in the right or "slow" lane.[1]

Cross-examination of Trooper McKelvey began with the trooper's admission that he was not an eyewitness to the accident; rather, he arrived on the scene at some point in time after the vehicles had come to rest. Defendants' trial counsel then marked for identification defense exhibit number two, the accident report. Plaintiffs' counsel objected to the use of the accident report, and the following discussion took place at side-bar:

"Mr. Milides: There is a statute in Pennsylvania that the admission of any police report . . .

"Mr. Oldt: I am going to ask him questions as to what he has shown on that police report.

"Mr. Milides: I will object to any reference to the police report itself. There is a statute that says . . .

"Mr. Oldt: The reason I want to ask him the question on this is because he had made a drawing here, *which shows the Volkswagen as coming over to the point of collision, shows the tractor-trailer completely in the fast lane all of the time.*

"Mr. Milides: The way I see it, I see the tractor-trailer encroaching on the line.

"Mr. Oldt: It *speaks for itself.* Then I think it is a relevant exhibit by way of contradicting his . . .

"The Court: *I would not permit the report to be an exhibit.* I think that is clear.

1. It should be noted that in addition to the trooper's testimony as to "swirl" skid marks, two disinterested eyewitnesses, as well as the two plaintiffs, place the plaintiffs' automobile in the "slow" lane at the point of impact.

"Mr. Oldt: That's correct. I don't intend to do that. All I want to do is . . .

"Mr. Milides: Not so loud, John. How can you question on an exhibit that is not going to go into evidence and talk about relevant points on the part of an accident report that is not going in? How does he propose to do this?

"Mr. Oldt: It's contradictory of his present testimony.

"Mr. Milides: How do you propose to do it?

"The Court: It is important enough, gentlemen, that I am going to . . .

"Mr. Doyle: Your Honor, I will join in Mr. Milides' objection also. We do not know from what information he made that diagram.

"The Court: It is important enough, gentlemen, to meet in the library." (Emphasis supplied)

Following a recess, the discussion continued:

"The Court: *I read Section 1217.1 of the Motor Vehicle Code as depriving its use in evidence even in cross-examination.* I have put it that flatly and that bluntly. So let some higher court say it is wrong.

"Mr. Milides: I should only point out: I made no reference to the accident report whatsoever in plaintiffs' case in chief.

"The Court: All right. Then the objection is sustained and the defendant is denied the privilege of using the accident report *in evidence* even in cross-examination of the state trooper.

"You may note the exception. Your exception will be noted." (Emphasis supplied)

It appears clearly from this exchange that defendants' trial counsel sought to use the report not

only to impeach the trooper's testimony, but also as substantive evidence of where the impact took place. While a modern view of the Hearsay Rule treats prior inconsistent statements as not being hearsay, and therefore admissible not only for impeachment purposes, but also to prove the truth of the matter asserted therein,[2] section 1217.1 of The Vehicle Code of April 29, 1959, P. 1. 58, as amended, 75 P. S. § 1217.1, clearly prohibits the use of police accident reports as substantive evidence. In pertinent part section 1217.1 reads as follows:

"The Commissioner of State Police shall, upon request, furnish a certified copy of the Pennsylvania State Police full report of investigation of any vehicle accident to any person involved in the accident, his attorney or insurer, and to the Federal Government, branches of the military service, agencies of the Commonwealth of Pennsylvania, and to officials of counties, cities, boroughs, towns, and townships, and to agencies of other states and nations and their political subdivisions. *Such copy shall not be admissible as evidence in any action* for damages or criminal proceedings arising out of a motor vehicle accident. . . ." (Emphasis supplied)

In view of the above-quoted language, and as defendants' appellate counsel concedes, the trial court quite properly prohibited the use of the report as an "exhibit," that is, as substantive evidence. Therefore, the sole use of the report remaining to defendants would have been to impeach the trooper based upon a prior inconsistent statement.

2. See McCormick on Evidence, 601, 603-4, § 251 (2d Ed., 1972).

While making no mention of it on brief, defendants' appellate counsel at oral argument put forward the proposition that the trial court's ruling on the use of the report as an exhibit deterred defendants' trial counsel from moving on to use the report to impeach the trooper's testimony. While we would not presume to account for the actions of defendants' trial counsel following the ruling, and while we do not understand that ruling as foreclosing any and all use of the report, nevertheless, we have concluded that use of this particular part of the report in question to impeach on the basis of a prior inconsistent statement would have been improper.

Preliminarily, we note that, absent the complication of a police accident report, a witness is generally subject to impeachment by the introduction of prior inconsistent statements. As noted in 58 Am. Jur., 417-18, §767:

"After a proper foundation has been laid a witness may be impeached by evidence of his declarations or statements inconsistent with or contradictory of his testimony at the trial, even though such variant statements are made after the testimony. Impeachment in this manner is everyday practice. It is the method most frequently resorted to to discredit witnesses, and is in some jurisdictions expressly authorized by statute. This rule as to showing the inconsistent statements of a witness rests upon the obvious propriety and necessity of informing the jury of circumstances so directly bearing upon the credibility of the witness and the value of his testimony as do contradictory statements by him of the controverted facts concerning which he testifies, and which the jury must de-

termine. The fact that he has stated the facts differently shows either a failure of memory, that he has forgotten what he once knew, or else it shows a want of integrity, and either way it impairs the value of his testimony."

Of course, as this passage makes clear, the prior statement must be that of the witness, and it must be contradictory to his present testimony. As noted in 5 Standard Pa. Pract. §191:

"Generally speaking, the credibility or veracity of a witness who has testified to a material fact may be impeached as to that fact by proof *that the witness has made* prior inconsistent statements as to the fact, or that he has committed prior inconsistent acts . . . *Such statements must, however, be contradictory or plainly inconsistent* in fact with the testimony of the witness in order to be admitted to impeach his veracity. . . Such previous contradictory and inconsistent statements may be in the form of unsworn statements or depositions. Contradictory and inconsistent statements in letters, or in other writings of a witness, may be admitted to impeach him." (Emphasis supplied)

In the within matter, as the side-bar exchange quoted above illustrates, the purported prior inconsistent statement is a diagram which allegedly depicts the relative position of the two vehicles at a point on the highway and in time immediately *prior* to the point of impact. There is no reference on the report, either confirmatory or contradictory, to "swirl type" skid marks. With respect to the inconsistency, defendants' trial counsel viewed the report as showing the plaintiffs' vehicle crossing over into defendants' lane of travel and the

trooper's testimony as inferring that the impact took place in plaintiffs' lane of travel. Defendants' appellate counsel points out that the inconsistency is, in fact, that the trooper testified as to skid marks, yet no reference is made to them in the diagram. Finally, plaintiffs' counsel saw no inconsistency with respect to either point.

For the purposes of this opinion, we will grant that some inconsistency exists;[3] however, the more important barrier to the adoption of defendants' position is that the prior statement, while perhaps inconsistent, is simply not that of the witness. All parties concede, and the record makes clear, that the trooper was not an eyewitness to the accident and arrived on the scene only *after* it occurred. Therefore, any diagram which purports to illustrate an event which occurred prior to the trooper's arrival must be based on information received from some other source. Thus, it would be improper to permit impeachment of the trooper by use of a statement which clearly was not based on his personal knowledge, and which, in fact, does not purport to be his statement.

While we have found no Pennsylvania cases dealing directly with the issue, defendants have cited several cases from other jurisdictions which have permitted impeachment of an officer based on his report.[4] However, our reading of these cases merely confirms our view that when such impeachment is undertaken, the statement must not only be contradictory but must also be that of the

3. Under a preferred view, the requisite degree of inconsistency is shown by showing that the prior statement fails to mention a material fact testified to by the witness. See McCormick on Evidence, 66, 67-68, § 34 (2d Ed. 1972).

4. See, for example: Larson v. Montpetit, 275 Minn. 394, 147 N.W.2d 580 (1966), and Halko v. State, (Del. Sup. Ct.) 204 A.2d 628 (1964).

witness. As succinctly stated in Wilson v. Bungalow Bar Corp. of America, 141 N. Y. Supp. 2d 106, 107, 285 App. Div. 1191 (1955):

"The admission into evidence of the police report concerning the accident was prejudicial error. It was offered by the defendant as affecting the credibility of the police officer, *but since it was based on hearsay statements obtained by him at the scene of the accident after its occurrence and did not purport to be an assertion of fact of the officer's own knowledge, it was not contradictory of anything to which he testified.* The facts contained in the said report were obtained from the defendant driver of the truck and were in accord with the officer's testimony upon the trial. The only thing the report might contribute to prove is that the police officer did not make a complete report; to the jury, however, it might constitute an official determination after investigation by the police officer." (Emphasis supplied).

. . . .

## ORDER

And now, March 2, 1976, defendants' motions for a new trial are denied and dismissed.