In the Matter of the Proposed Suspension, Revocation or Non–Renewal of the Nursing Home Licenses of PARKWAY MANOR HEALTHCARE CENTER and Innsbruck Healthcare Center.

No. C3–89–862.

Court of Appeals of Minnesota.

Nov. 28, 1989.

Review Denied Jan. 18, 1990.

Thomas J. Barrett, Michael D. Christenson, and Louis P. Smith, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, and Malcolm J. Harkins, III, Casson, Harkins & Lapallo, Washington, D.C. for appellants, Parkway Manor Healthcare Center and Innsbruck Healthcare Center.

Hubert H. Humphrey, III, Atty. Gen., John A. Breviu, Asst. Atty. Gen., and Mary L. Stanislav, Sp. Asst. Atty. Gen., Minneapolis, for respondent, Minnesota Dept. of Health.

Joel H. Jensen, Bloomington, for amicus curiae, Care Providers of Minnesota.

Heard, considered and decided by PARKER, P.J., and NORTON and SHORT, JJ.

## OPINION

SHORT, Judge.

On review of a discovery order by an administrative law judge, appellants argue that certain quality assurance documents are (1) shielded from discovery under Minn. Stat. § 145.64 (1988) and (2) protected from discovery under a common-law privilege for self-evaluation data. We disagree and affirm the decision of the administrative law judge (ALJ).

## FACTS

The Minnesota Department of Health (department) initiated an action pursuant to Minn.Stat. § 144A.11 (1988) to suspend, revoke, or not renew the nursing home licenses of Parkway Manor Healthcare Center (Parkway) and Innsbruck Healthcare Center (Innsbruck). Parkway and Innsbruck are owned and operated by Beverly Enterprises–Minnesota, Inc., a subsidiary of Beverly California Corporation (Beverly). In the course of that proceeding, the department served discovery requests on appellants to obtain corporate correspondence, memoranda, and other communications related to the business operations at Beverly's facilities in Minnesota. Parkway and Innsbruck objected to the requests that sought information developed by Beverly's quality assurance division on the grounds that those documents were privileged under Minn.Stat. § 145.64 (1988) and common law.

Beverly's nationwide quality assurance program was established to identify, develop and implement internal standards for improving the resident care offered at its nursing homes. Quality assurance staff come from the environmental, nursing, social services, and dietary "disciplines." They make unannounced visits, interview staff and patients, tour facilities, and review medical records. The staff rate a nursing home's performance by evaluating (a) its policies and procedures, (b) the quality of professional staff, and (c) the social services offered residents. They investigate any problems, work with personnel to try to resolve them, and perform follow-up evaluations. The staff report to the directors of the quality assurance division, who report to Beverly's corporate director of quality assurance. Beverly maintains that all information developed by the quali-

ty assurance program is highly confidential.

After appellants claimed information from the quality assurance program was privileged, the department filed a motion to compel with the ALJ. The ALJ concluded that (a) the statutory privilege of Minn. Stat. § 145.64 does not extend to quality assurance information at nursing homes because Beverly's quality assurance program was not a review organization as defined in the statute; (b) the statute was not intended to shield relevant information from state licensing authorities; and (c) there is no common-law "self-evaluation" privilege. Appellants obtained a temporary stay of that order. They sought a writ of prohibition or discretionary review from this court. We denied the writ of prohibition, but granted discretionary review.

## ISSUES

I. Are appellants' quality assurance documents shielded from discovery under the privilege accorded review organizations in Minn.Stat. § 145.64 (1988)?

II. Are appellants' quality assurance documents protected from discovery under a common-law privilege for self-evaluation data?

## ANALYSIS

A party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *." Minn.R.Civ.P. 26.-02(a). Administrative rules allow discovery pursuant to the Minnesota Rules of Civil Procedure and the assertion of privileges recognized at common law. Minn.R. 1400.-6700, subpt. 2 (1989).

█ "[E]videntiary privileges constitute barriers to the ascertainment of truth and are therefore to be disfavored and narrowly limited to their purposes." *Larson v. Montpetit*, 275 Minn. 394, 402, 147 N.W.2d 580, 586 (1966). Courts should not interpret a statute to create a privilege going beyond the statute's purpose, when an equally plausible construction will cre-

ate a privilege which, although narrower, serves the statute's purpose. *Id.* The burden rests upon the party claiming the privilege to present facts showing it has a right to assert the privilege and that the communication falls within the scope of the privilege that protects a particular interest or relationship. *State v. Lender*, 266 Minn. 561, 564, 124 N.W.2d 355, 358 (1963).

█ The trial court has considerable discretion in granting or denying discovery requests, and, absent a clear abuse of discretion, the decision regarding discovery will not be disturbed. *Erickson v. MacArthur*, 414 N.W.2d 406, 407 (Minn.1987). The same standard applies to review of an ALJ's discovery decision. *See Electromec Design & Development Co. v. National Labor Relations Board*, 409 F.2d 631, 635 (9th Cir.1969). This court is free to exercise independent judgment on questions of law. *Geo. A. Hormel & Co. v. Asper*, 428 N.W.2d 47, 50 (Minn.1988).

I.

█ The statutory privilege that the nursing homes seek to assert is found in Minn.Stat. § 145.64, which provides in relevant part:

All data and information acquired by a review organization, in the exercise of its duties and functions, shall be held in confidence, shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization, and shall not be subject to subpoena or discovery. No person described in section 145.63 shall disclose what transpired at a meeting of a review organization except to the extent necessary to carry out one or more of the purposes of a review organization. The proceedings and records of a review organization shall not be subject to discovery or introduction into evidence in any civil action against a professional arising out of the matter or matters which are the subject of consideration by the review organization.

Minn.Stat. § 145.64 (1988). This statute is designed to serve the strong public interest in improving the quality of health care by

granting statutory protection to certain health care review organizations. *Kalish v. Mount Sinai Hospital*, 270 N.W.2d 783, 785 (Minn.1978). The statute encourages the medical profession to police its own activities with minimum judicial interference. *Cf. Campbell v. St. Mary's Hospital*, 312 Minn. 379, 389, 252 N.W.2d 581, 587 (1977) (construing Minn.Stat. § 145.63).

Appellants argue that Beverly's quality assurance division constitutes a review organization within the meaning of the statute. Review organization is defined as:

[A] committee whose membership is limited to professionals and administrative staff, except where otherwise provided for by state or federal law, and which is established by a hospital, by a clinic, by one or more state or local associations of professionals, by an organization of professionals from a particular area or medical institution, by a health maintenance organization as defined in chapter 62D, by a nonprofit health service plan corporation as defined in chapter 62C or by a professional standards review organization established pursuant to United States Code, title 42, section 1320c–1 et seq. to gather and review information relating to the care and treatment of patients * * *.

Minn.Stat. § 145.61, subd. 5 (1988), *amended by* Minn.Stat. § 145.61, subd. 5 (Supp. 1989).[1] A "professional" is defined as:

a person licensed or registered to practice a healing art under chapter 147 or 148, to practice dentistry under chapter 150A, to practice as a pharmacist under chapter 151, or to practice podiatry under chapter 153.

Minn.Stat. § 145.61, subd. 2 (1988). Administrative staff is defined as "the staff of a hospital or clinic." Minn.Stat. § 145.61, subd. 4a (1988). The statute raises four issues in this case: (a) whether the composition of Beverly's quality assurance staff meets the membership requirement; (b) whether a federal law required the expanded make-up of Beverly's quality assur-

ance staff; (c) whether Beverly's quality assurance staff was established by a hospital or clinic or association of professionals; and (d) whether underlying policy reasons compel an extension of the statute.

A. The composition of Beverly's quality assurance staff disqualifies it from the statutory privilege.

The privilege statute, by its terms, only protects documents of "review organizations." Minn.Stat. § 145.64. Review organizations must be composed of a "committee whose membership is limited to professionals and administrative staff." Minn. Stat. § 145.61, subd. 5. Beverly's committee included members who were neither professionals nor administrative staff as defined by Minn.Stat. § 145.61, subds. 2, 4a. Thus, the committee does not qualify for the privilege.

The holding of *Warrick v. Giron*, 290 N.W.2d 166, 170 (Minn.1980), is not in conflict. In *Warrick* the supreme court held a committee's report was privileged under Minn.Stat. § 145.64. The composition of that committee, according to a footnote in the opinion, included medical students. *Warrick*, 290 N.W.2d at 170 n. 1. Medical students in their final year of study may be licensed. Minn.Stat. § 147.02, subd. 1(b) (1988). Thus, it is not clear that the committee composition disqualified it for the privilege. Most significantly, the parties in *Warrick* apparently did not raise the issue presented here, and the supreme court did not consider it. Thus, *Warrick* does not stand for the proposition that a committee may include nonprofessionals and still qualify for the statutory privilege.

B. Federal law did not require appellants to maintain a quality assurance staff comprising nonprofessionals and nonstaff members.

Membership in a review organization is limited to professional and administrative staff "except where otherwise provided for by state or federal law." Minn.Stat.

1. The 1989 amendment to Minn.Stat. § 145.61, subd. 5, does not affect the issues raised in this appeal.

§ 145.61, subd. 5. Appellants argue federal law required them to maintain a quality assessment and assurance staff consisting of the director of nursing services, a physician, and at least three other staff members. *See* 42 U.S.C.A. § 1396r(b)(1)(B) (West Supp.1989). This argument is without merit because the federal law cited and relied upon by appellants does not become effective until October of 1990.

C. Appellants' quality assurance staff was not established by a hospital, clinic or association of professionals.

The statute provides that a review organization may be established by certain specified facilities or organizations. Minn.Stat. § 145.61, subd. 5. These include organizations of professionals from a particular "medical institution." *Id.* Nursing homes are not specifically listed.

Appellants argue nursing homes are medical institutions. *See* Minn.Stat. § 145.61, subd. 4 (1988) (defining "health care" to include services furnished by nursing homes). We disagree. Subdivision 4 only tells us that nursing homes provide health care. It does not suggest that nursing homes provide medical care or are medical institutions. Indeed, if they did provide medical care, they would violate Minn.Stat. § 147.081 (1988) (prohibiting practice of medicine without a license). The legislature specifically listed hospitals, clinics, health maintenance organizations, and nonprofit health service plan corporations as the types of facilities that may form statutorily protected review organizations. Had the legislature intended nursing homes be included with those organizations, it could have done so explicitly. Where the words of the law are clear and free from ambiguity, they may not be disregarded under the pretext of pursuing the spirit of the law. *See* Minn.Stat. § 645.16 (1988).

D. Policy reasons do not compel an extension of the statute's clear application.

Appellants argue Minn.Stat. § 145.64 extends protection for review organizations that exist for the purposes set forth in Minn.Stat. § 145.61, subd. 5(a)–(j). We disagree. The statute protects review organizations of certain entities, not any organization that performs self-review. The purpose of the privilege given to some peer review committees is to assure that the discussions necessary to improve patient care are carried on, despite the threats of malpractice and defamation actions. *See Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249, 250 (D.D.C.1970), *aff'd,* 479 F.2d 920 (D.C.Cir.1973); *Kalish,* 270 N.W.2d at 785. Statutory privileges must be narrowly limited to their purposes. *Larson,* 275 Minn. at 402, 147 N.W.2d at 586. While Beverly's quality assurance program has commendable goals, it does not fall within the statutory privilege and is therefore not entitled to the protection. Because we conclude the nursing homes' quality assurance program does not fall within the statutory definition of "review organization," it is not necessary to reach the issue of whether the statute would be applicable to this type of administrative proceeding.

## II.

Appellants also argue their quality assurance documents are protected from discovery under a common-law privilege for self-evaluation data. *See Bredice,* 50 F.R.D. at 250–51. This is an issue of first impression in this state. We find the legislature has indicated a desire to be the exclusive source of evidentiary privileges. We therefore decline to recognize the proposed privilege for self-evaluation data beyond that provided by statute.

Appellants do not seriously suggest that the proposed privilege is a historically recognized rule of common law. Rather, they suggest this court should recognize the privilege because its underlying policy is in the public interest. While we agree that promoting self-evaluation is a laudatory goal, we must first decide whether the legislature or the court is the proper body to grant such a privilege. *See Davison v. St. Paul Fire & Marine Insurance Co.,* 75

Wis.2d 190, 203–04, 248 N.W.2d 433, 440–41 (1977).

Throughout our state's history, the primary source of law on evidentiary privileges has been statutory. *See* 1851 Minn. Terr. Laws ch. 95, §§ 50–53 (codifying evidentiary privileges). The current provision states that every person of sufficient understanding may testify except as otherwise provided in the statute. Minn.Stat. § 595.02, subd. 1 (1988). The exceptions listed include the interspousal privilege, the attorney-client privilege, the clergy privilege, and many others. The language of the statute suggests the privileges therein were intended to be exhaustive. Basic rules of statutory construction confirm this. *See* Minn.Stat. § 645.19 (1988) ("Exceptions expressed in a law shall be construed to exclude all others.").

The legislature again indicated its intent to be the sole source of evidentiary privileges in 1974, when it passed the act enabling the Minnesota Supreme Court to promulgate evidentiary rules. *See* Minn. Stat. § 480.0591 (1988). The legislature granted broad power to the court to regulate evidentiary matters, but declared that the supreme court "shall not have the power to promulgate rules of evidence which conflict, modify, or supersede" statutes that relate to the privacy of communications. Minn.Stat. § 480.0591, subd. 6(d) (1988); *see* Minn.R.Evid. 501 committee comment ("In the enabling legislation which created the committee, the legislature specifically attempted to limit the power of the Supreme Court to promulgate rules of evidence [on privilege]."). Consequently, Minnesota Rule of Evidence 501 merely states that nothing in the rules should be deemed to modify or supersede existing laws on privilege. The federal counterpart, by contrast, states that in federal question cases, the privilege of a witness "shall be governed by the principles of the common law as they may be interpreted by the [federal courts] in the light of reason and experience." Fed.R.Evid. 501. Thus, federal courts have more freedom to expand the rules of evidentiary privileges than do the courts of this state.

It is clear that recognizing the privilege appellants propose would conflict with Minn.Stat. § 595.02. The legislature has limited the power of the supreme court to recognize privileges by rule. This court should not do by case law what the supreme court did not do by rule.

Appellants argue that the appellate courts of this state have recognized evidentiary privileges without statutory authorization. Appellants cite *State v. Staat*, 291 Minn. 394, 192 N.W.2d 192 (1971) and *Ostrowski v. Mockridge*, 242 Minn. 265, 65 N.W.2d 185 (1954). We have read these cases carefully, and conclude that each case construed privileges available under Minn.Stat. § 595.02. Appellants also cite *Thompson v. State*, 284 Minn. 274, 170 N.W.2d 101 (1969) and *State v. Rothstein*, 422 N.W.2d 300 (Minn.Ct.App.1988) as instances of judicial creation of evidentiary privileges. *Thompson* did not reach the issue of whether a newspaper reporter is privileged not to reveal the identity of a source. *Rothstein* recognized a police officer's privilege to withhold the identity of informants. The privilege, however, is rooted in the public officer's privilege codified in Minn.Stat. § 595.02, subd. 1(e) (1988). *See Erickson*, 414 N.W.2d at 408. This court recognized a privilege for mediators prior to the effective date of Minn. Stat. § 595.02, subd. 1(k) (1988). *Sonenstahl v. L.E.L.S., Inc.*, 372 N.W.2d 1, 6 (Minn.Ct.App.1985). However, the policy expressed by the legislature's enactment of subdivision 1(k) was much more clear than the policy appellants ask us to recognize. Thus, none of the cases appellants cite created a new privilege out of whole cloth, as appellants now ask us to do.

In view of the longstanding judicial hostility towards evidentiary privileges, *see Staat*, 291 Minn. at 397, 192 N.W.2d at 195–96, and the lack of any statutory authority to recognize a new one, we decline to recognize the privilege for self-evaluation data. The legislature could have extended the self-evaluation privilege to nursing homes by a minor rewording of Minn. Stat. § 145.64. That the legislature did not do so is strong evidence of its intent not to extend the privilege to nursing homes.

## DECISION

The requested information from Beverly's quality assurance program is not protected from discovery by statute or by a common law privilege for self-evaluation data. The ALJ was correct to compel disclosure of information developed by Beverly's quality assurance program to the department.

Affirmed.