CITY OF MINNEAPOLIS, et al.,
Respondents,

v.

Lenell A. JOHNSON, Relator.

No. C7-89-1027.

Court of Appeals of Minnesota.

Jan. 9, 1990.

Robert J. Alfton, Minneapolis City Atty., Steven R. Fredrickson, Asst. City Atty., Minneapolis, for respondents.

Lawrence N. Radden, Lawrence N. Radden & Assoc., Minneapolis, for relator.

Considered and decided by NORTON, P.J., and SCHUMACHER and

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

FLEMING *, JJ., without oral argument.

## OPINION

NORTON, Judge.

Relator Lenell A. Johnson ("Johnson") obtained a writ of certiorari seeking review of his discharge as a Minneapolis police officer. The Minneapolis Civil Service Commission ("Commission") affirmed the recommendation of an administrative law judge ("ALJ"), made after nine days of hearings. Johnson was terminated for violation of Minneapolis Civil Service Commission Rules 11.03B.13, which prohibits conduct unbecoming to a public employee, and rule 11.03B.18, which prohibits other violations of police department rules. The violations arose mainly from one admitted use of cocaine and from another incident in which Johnson failed to intervene in or report observed cocaine use. The improper use of drug test results is also at issue.

## FACTS

Officer Johnson served the Evanston, Illinois police department before joining the Minneapolis Police Department ("Department") in 1983. Johnson received good performance evaluations and was assigned as a patrolman in the third precinct of south Minneapolis, where he also lived.

Johnson recites a litany of racially harassing behavior aimed at him by fellow officers, although he made no official complaint prior to his discharge.

During the summer of 1987, Johnson was under considerable personal, financial and job-related stress. Johnson was supporting four children in two households and also felt anxiety about the pressures of his work. Johnson's friends became extremely concerned and urged him to seek professional help. Eventually, Johnson sought treatment information through departmental channels, but neither he nor the Department followed through.

One night Johnson went to a party in his patrol area. The host had frequently invited Johnson to drop in for a drink and their

girlfriends were friends. Johnson later admitted that he saw cocaine available at the party and that he took no enforcement action. Departmental rules require an officer who observes suspected narcotic activity to intervene or file a written report with the narcotics division. Johnson did not intervene or file a report.

In October, an officer under FBI investigation implicated Johnson in drug related activity, described the party and alleged that he had otherwise used cocaine with Johnson.

In December Johnson returned to duty after a vacation and was told to appear before the Internal Affairs Division ("IAD") for investigation. Johnson was informed he had been named as a suspect in the use of controlled substances and that he must give a statement. Johnson read and signed a "Garrity" statement acknowledging that he understood he could be ordered to account for his actions on or off duty. He was required to cooperate and truthfully answer all questions directed to him. Statements compelled by this "Garrity" release may not be used in criminal proceedings against the employee. As further incentive to volunteer truthful information, the only criminal charge which may result from such questioning is perjury.

Johnson was asked whether he had ever used drugs and he admitted that he had used cocaine and marijuana once each in other circumstances, and that he observed cocaine at the party. He said he discussed the situation with another officer but had no justifiable answer for not having reported the incident. He was then required to consent to a drug test.

Johnson received a letter from the Department indicating he would be disciplined for the admitted cocaine use, the party incident and the drug test results. Johnson voluntarily entered inpatient chemical dependency treatment. Johnson did not attend his disciplinary hearing as he was in treatment. Deputy Chief Lutz sustained all the charges, but his letter separated those based upon the drug test and recommended Johnson be discharged on the basis of the charges not related to the test.

However, Lutz stated that the drug test result "reinforces that independent recommendation" that Johnson be terminated. This recommendation was approved by Chief Bouza on January 5, 1988. Johnson appealed; hearings began the next month.

The ALJ concluded that Johnson was discharged for cocaine use and for failure to enforce against or report observed narcotic activity. The ALJ found that officers against whom cocaine-use charges were substantiated are consistently discharged and concluded that race discrimination was not a factor. The ALJ concluded that Johnson would have been discharged absent the drug test and that his discharge therefore did not violate Minn.Stat. § 181.953, subd. 10 (1988).

The ALJ also held that Johnson's misconduct was not the result of chemical dependency and that his discharge therefore did not violate Minneapolis Civil Service Commission Rule 11.03A.3. The ALJ recommended that the Commission affirm Johnson's discharge. The Commission voted to uphold the discharge based on cocaine use, stating that chemical dependency treatment after the fact would not justify lesser discipline but that if treatment had been sought before drug use was revealed, lesser disciplinary measures would likely be justified under the treatment policy.

## ISSUES

I. Was Johnson's discharge racially discriminatory?

II. Does just cause exist to support Johnson's discharge?

## ANALYSIS

### I.

*Jurisdiction, Standard and Scope of Review*

■ Respondent City of Minneapolis ("City") asserts that Johnson's writ should be dismissed because the Administrative Procedures Act ("APA") does not apply to municipalities. Johnson should have petitioned pursuant to Minn.Stat. § 606.01 (1988), which would have permitted John-

son sixty days in which to petition rather than the thirty days permitted by the APA. This error is insignificant.

The APA applies to agencies having statewide jurisdiction. Minn.Stat. § 14.02, subd. 2 (1988). The City correctly asserts that the APA does not apply. However, the authority the City cites states:

> Application of the standard of review for administrative agency action is appropriate even though the Administrative Procedure Act does not apply to municipal agencies. An appellate court may reverse the commission's decision if it is unsupported by substantial evidence on the record or if the court finds it is arbitrary and capricious or affected by other errors of law.

In Re Proposed Discharge of Larkin, 415 N.W.2d 79, 81 (Minn.Ct.App.1987) (Minneapolis police officer sought review of discharge). Johnson's discharge was the result of a quasi-judicial proceeding. This court may review the evidence to determine whether it supports the findings of fact, review the conclusions of law and determine whether the decision was arbitrary, oppressive, unreasonable, fraudulent or erroneous, but may not review de novo. Selling v. City of Duluth, 248 Minn. 333, 339, 80 N.W.2d 67, 71 (1956).

### Racially Discriminatory or Disparate Treatment

■■■ The Commission clearly established that it terminated Johnson because it differentiates felony cocaine use from misdemeanor marijuana use. This distinction is borne out in the records of other disciplinary actions in which officers were suspended without pay for marijuana possession and use but discharged for cocaine use. The ALJ concluded that Johnson failed to produce evidence sufficient to establish a prima facie case of discriminatory discharge. To establish such a case, four elements must be shown:

(1) That the employee was a member of a protected group;

(2) That the employer had a policy or practice concerning the activity for which the employee was discharged;

(3) That non-minority employees either were given the benefit of leniency or were not held to compliance with a strict application of the employer's policy; and

(4) That the minority employee was disciplined either without the application of a lenient policy or in conformity with the strict one.

See Equal Employment Opportunity Commission v. Brown & Root, Inc., 688 F.2d 338, 340–41 (5th Cir.1982); United States Equal Employment Opportunity Commission v. Minneapolis Electric Steel Casting Co., 552 F.Supp. 957, 964 (D.C. Minn.1982). Johnson did not show that the policy is enforced differently against minority officers; rather, the policy itself differentiates based upon the conduct involved.

Had Johnson shown that the particular misconduct which constituted good cause for his discharge did not constitute good cause for discharge when committed by a white officer, the result may have been different. The issue of discrimination is inextricably intertwined with whether just cause for his discharge was found. If a cause for discharge only results in the discharge of black officers, that discharge may be racially discriminatory.

The record does not establish that Johnson's discharge was racially motivated or racially disparate treatment. The ALJ's findings and conclusions in this regard are affirmed.

## II.

Johnson may only be discharged for cause. Minneapolis Charter ch. 19 § 11 (Supp.1986). Minneapolis Civil Service Commission Rule 11.03B.13 provides that conduct unbecoming to a public employee may be cause for disciplinary action. Rule 11.03B.18 prohibits violation of Department rules. The ALJ determined that Johnson's conduct was unbecoming to a public employee and a violation of several Department rules relating to drug use and immediate law enforcement action against violations of law.

Whether just cause exists to discharge a civil service employee is a question of law. Cause must be something of a substantial nature directly affecting the rights and interests of the public. *Ekstedt v. Village of New Hope*, 292 Minn. 152, 162, 193 N.W.2d 821, 828 (1972) (quoting *State ex rel. Hart v. Common Council*, 53 Minn. 238, 244, 55 N.W. 118, 120 (1893)). The evidence showing cause must be substantial. *Hagen v. Civil Service Board*, 282 Minn. 296, 300, 164 N.W.2d 629, 632 (1969). The ALJ held that substantial evidence established just cause to discharge Johnson because Johnson admitted use of marijuana and cocaine, observed suspected cocaine use, but took no enforcement action, and because of the drug test.

*Drug Testing Pursuant to Minn.Stat. § 181.953*

■ Johnson gave consent that a urine specimen be tested for the presence of drugs. Failure to do so would have been grounds for discharge from employment. The authority to conduct this test, the standards to be met and the use of the results obtained are governed by the statute and related rules. Minn.Stat. § 181.953, "Drug and Alcohol Testing in the Workplace," subd. 10 states in pertinent part:

**Subd. 10. Limitations on employee discharge, discipline, or discrimination.**

\*     \*     \*     \*     \*     \*

(b) In addition to the limitation under paragraph (a), an employer may not discharge an employee for whom a positive test result on a confirmatory test was the *first* such result for the employee on a drug or alcohol test requested by the employer *unless* the following conditions have been met:

(1) the employer has *first* given the employee an opportunity to participate in \* \* \* a drug or alcohol counseling or rehabilitation program \* \* \* after consultation with a certified chemical use counselor or a physician trained in the diagnosis and treatment of chemical dependency; *and*

(2) the employee has *either refused* to participate in the counseling or rehabili-

tation program *or has failed* to successfully complete the program \* \* \*.

Minn.Stat. § 181.953, subd. 10 (1988) (emphasis added).

If a drug test is performed, the employer must not use the results as cause to terminate the employee. The statute prohibits discharge based on an initial drug test, but does not prohibit a discharge based only upon other reliable evidence.

The requirements surrounding drug tests are clear. Subpart (b) prohibits discharge of an employee after the first test *unless* the employer has first provided the opportunity for drug or alcohol counseling and rehabilitation *and* the employee has either refused to participate or has participated but has failed to successfully do so.

The Department did not offer counseling or treatment to Johnson after the test. Therefore, the Department did not comply with the statute and any use of the test results against Johnson is prohibited. The test results, and all related allegations that Johnson violated Department rules, cannot be considered evidence of just cause for discharge and must be disregarded. The ALJ concluded that Johnson would have been terminated regardless of these results, but made findings of fact relating to the drug test. The statute requires that these results and findings be ignored. Therefore, Johnson's discharge can only be upheld if based solely on other factors.

*Commission Rule 11.03A.3*

The Commission rule regarding conduct resulting from chemical dependency states in pertinent part:

Employees who fail to meet minimum performance and behavioral standards because of chemical dependency *and* who have *either refused* to undergo *or failed* to complete a prescribed program of treatment, or have previously received one period of prescribed treatment within the last five (5) years while a City employee may be subject to discipline including discharge. \* \* \*

Minneapolis Civil Service Commission Rule 11.03A.3 (emphasis added).

The ALJ concluded that Johnson's misconduct, as set forth in the findings and conclusions, was not because of chemical dependency and that this disciplinary action was therefore not prohibited. Johnson was diagnosed as suffering "episodic alcoholic syndrome." However, the record reveals no expert analysis or definition of this term.

■ It is uncontradicted that Johnson neither intervened in nor reported what he saw at the party. There is no evidence that Johnson was intoxicated during the cocaine use to which he admitted. The ALJ found as fact that no officer has been discharged for a single incident of marijuana use. Johnson's discharge for misconduct may be upheld based upon his one admitted use of cocaine and upon his failure to intervene in or report suspected cocaine noticed at a party.

## DECISION

Johnson's discharge was not racially discriminatory or disparate treatment. The drug test results may not be considered. There is not sufficient evidence upon which to conclude that chemical dependency caused these two rule violations. These incidents constitute misconduct and Johnson's discharge is therefore supported by just cause.

Affirmed.