**In the Matter of the Recommendation for Discharge of Bruce A. COPELAND, Police Officer, Police Department.**

No. C4–89–2118.

Court of Appeals of Minnesota.

May 15, 1990.

Review Denied July 13, 1990.

Roger A. Peterson, Scott A. Higbee, Peterson, Engberg & Peterson, Minneapolis, for relator Copeland.

Robert J. Alfton, Minneapolis City Atty., Steven R. Fredrickson, Asst. City Atty., Minneapolis, for respondent City of Minneapolis.

Considered and decided by WOZNIAK, C.J., and PARKER and SHORT, JJ.

## OPINION

SHORT, Judge.

Relator Bruce Copeland obtained a writ of certiorari, seeking review of his discharge as a police officer for the City of Minneapolis. Relator was discharged for "gross misconduct" in violation of Minneapolis Civil Service Commission Rule 11.-03A.3, which permits discharge based on failure to meet minimum performance standards due to chemical dependency. Relator appeals, arguing his discharge violates Minn.Stat. § 181.953, subd. 10 (1988), prohibiting employee discharge based on positive drug test results. We affirm.

## FACTS

Relator has been a police officer for the City of Minneapolis since 1976. His job performance evaluations consistently rated him as one of the bottom three of approximately 30 police officers at his precinct, except for a superior rating in 1986. The unacceptable performance evaluations always included comments regarding relator's low work productivity, tardiness, and absenteeism.

Pursuant to a directive from the police administration, relator was evaluated for chemical dependency in 1983 and 1987. Both of these evaluations resulted in a finding of no chemical dependency.

In June of 1988, relator was drinking heavily and began using crack cocaine three to four times per week. He was consistently late for his 6:00 a.m. work shift. When questioned by a superior officer about chemical dependency, relator denied that he had a problem. In early December of 1988, relator's superior wrote a memorandum to the Internal Affairs Division (IAD) concerning relator's poor job performance. On December 20, an officer discovered 34 grams of cocaine in small bundles located in the door handles of both the left and right rear seat doors of the squad car used by relator during the previous shift. Due to the complaints regarding his job performance and the discovery of narcotics in his squad car, relator was interviewed by an IAD officer and asked to take a drug test. Relator provided a urine sample, but specifically denied any personal problems affecting his job performance. The sample tested positive for cocaine use.

On December 22 another officer found a packet of a cutting agent for cocaine over the visor of a squad car previously used by relator. IAD ordered relator to appear for a second interview and drug test. During the interview, relator specifically denied any knowledge of the cocaine or the cutting agent found in the two squad cars. He was then advised that his initial urine sample tested positive for cocaine. Relator then admitted to frequent cocaine use, revealed the name and address of his drug supplier, and admitted his failure to arrest

the supplier. The results from this second test were also positive and contained evidence contradicting his stated last date of use. Confirmatory tests were done on both drug tests.

A warrant to search relator's house and vehicle was executed. Drug paraphernalia and traces of cocaine were discovered in his home. On December 29 relator admitted an addiction to cocaine, denied use in the previous three days and submitted to a third drug test, which was found to be negative. Relator then contacted a police department drug counselor, who referred him to a drug rehabilitation program. In January of 1989, relator voluntarily entered and successfully completed a drug rehabilitation program. The police department did not offer any rehabilitation program to relator.

After a departmental hearing in January of 1989, the police chief recommended that relator be discharged. A three day hearing was held before an administrative law judge (ALJ). During the hearing, the police department did not attempt to prove a connection between relator and the drugs or cutting agent found in the squad cars. Relator stipulated that he had purchased, possessed and used cocaine, failed to arrest the drug dealer from whom he purchased drugs, twice reported for duty under the influence of drugs, and unlawfully possessed drug paraphernalia. The ALJ recommended discharge, concluding that relator's stipulated violations amounted to "gross misconduct" under Commission Rule 11.03A.3 and that his discharge did not violate Minn.Stat. § 181.953, subd. 10. The ALJ specifically concluded that all of the violations emanated directly from relator's dependency on alcohol and cocaine. The Civil Service Commission accepted the ALJ's findings, conclusions and recommendation for discharge. The Commission concluded that relator failed to perform the duties of a police officer.

## ISSUE

Does Minn.Stat. § 181.953, subd. 10 (1988) allow the discharge of a police officer based on conduct caused by drug

abuse but independent from a positive drug test result?

## ANALYSIS

In reviewing a decision by the Civil Service Commission, this court may reverse the Commission's decision if it is unsupported by substantial evidence on the record or if the court finds it is arbitrary and capricious or affected by other errors of law. *In re Proposed Discharge of Larkin*, 415 N.W.2d 79, 81 (Minn.App.1987). Statutory construction is a question of law, subject to de novo review by this court. *Hibbing Education Association v. Public Employment Relations Board*, 369 N.W.2d 527, 529 (Minn.1985).

The decision to terminate relator was made after a positive drug test administered pursuant to Minn.Stat. §§ 181.-950–.957 (1988). The ALJ concluded relator was chemically dependent on alcohol and cocaine at the time of his gross misconduct and that his misconduct emanated directly from his chemical dependency. The commission adopted this conclusion without modification. Relator argues he cannot be terminated on the basis of activity which is associated with his chemical dependency without being offered counseling or rehabilitation by the employer under Minn.Stat. § 181.953, subd. 10(b). We disagree.

The fundamental aim of an appellate court construing a statute is to ascertain and give effect to the legislative intent. *County of Hennepin v. City of Hopkins*, 239 Minn. 357, 362, 58 N.W.2d 851, 854 (1953). There is simply no room for construction when the statute speaks for itself. *See Commissioner of Revenue v. Richardson*, 302 N.W.2d 23, 26 (Minn. 1981).

The statute at issue prescribes the circumstances when an employer may test for drugs, and the procedures to be followed when tests are administered. It states in relevant part:

Subd. 10. Limitations on employee discharge, discipline, or discrimination.

(a) An employer may not discharge, discipline, discriminate against, or request or require rehabilitation of an employee on the basis of a positive test result from an initial screening test that has not been verified by a confirmatory test.

(b) In addition to the limitation under paragraph (a), an employer may not discharge an employee for whom a positive test result on a confirmatory test was the first such result for the employee on a drug or alcohol test requested by the employer unless the following conditions have been met:

(1) the employer has first given the employee an opportunity to participate in, at the employee's own expense or pursuant to coverage under an employee benefit plan, either a drug or alcohol counseling or rehabilitation program, whichever is more appropriate, as determined by the employer after consultation with a certified chemical use counselor or a physician trained in the diagnosis and treatment of chemical dependency; and

(2) the employee has either refused to participate in the counseling or rehabilitation program or has failed to successfully complete the program, as evidenced by withdrawal from the program before its completion or by a positive test result on a confirmatory test after completion of the program.

Minn.Stat. § 181.953, subd. 10 (1988). The purpose of the statute is not to prohibit discharge for an employee's conduct caused by drug use, nor is it to prevent discharge for the department's failure to offer counseling. The clear legislative intent behind the statute is to prevent discharge based solely on drug test results without first offering counseling. This fact is further evidenced by the words used by the legislature in describing the statute. Both the title of the statute and its description characterize it as regulating the administration of drug testing in the workplace. *See* 1987 Minn.Laws ch. 388. The statute, however, does not bar the discharge of an employee for reasons independent of the test result. *City of Minneapolis v. Johnson*, 450 N.W.2d 156, 160 (Minn.App.1990).

■ In *Johnson,* we affirmed the Commission's discharge of a police officer based on "admitted use of cocaine and upon his failure to intervene in or report suspected cocaine noticed at a party."[1] *Id.* at 161. While the officer in *Johnson* admitted his drug-related conduct prior to being tested, the opinion does not bar discharge based on evidence discovered after the results of a drug test. We are mindful that the abuse of controlled substances inherently involves illegal conduct apart from drug use. The statute simply does not prohibit discharge for conduct which, although inextricably intertwined with the use of illegal drugs, amounts to just cause for termination. Those were the circumstances presented in *Johnson* and they are the circumstances presented here. Hence, relator was not discharged because he failed a drug test; he was discharged because he failed to perform his duties as a police officer.

■ We recognize that the decisions in *Johnson* and this case provide opportunity to circumvent the spirit of Minn.Stat. § 181.953, subd. 10. For example, the city here used the positive drug test to obtain the information from relator which led to his discharge. We are constrained, however, to follow the letter of the law and not abandon it for a construction favoring its spirit. Minn.Stat. § 645.16 (1988); *see also Larson v. Montpetit,* 275 Minn. 394, 147 N.W.2d 580, 586 (1966) (evidentiary privileges narrowly construed); *In re Parkway Manor Healthcare Center,* 448 N.W.2d 116, 118 (Minn.App.1989) (same), *pet. for rev. denied* (Minn. Jan. 18, 1990). The mischief to be remedied was the summary termination of an employee based solely on the result of one drug test. Relator received this protection. A positive test result, however, cannot be read to bar the police department from taking action against an officer based on acts of misconduct due to chemical dependency. In this case, relator (a) associated with drug deal-ers, (b) purchased, used and possessed illegal drugs, (c) failed to enforce the law with respect to drug activities, (d) performed the job of police officer which includes carrying a firearm while under the influence of cocaine, (e) was chronically late or unable to report to work due to drug and alcohol abuse, and (f) lied to his superiors regarding his use of drugs. Under these circumstances, substantial evidence supports the Commission's findings and its decision to discharge relator is reasonable.

## DECISION

Minn.Stat. § 181.953, subd. 10 does not prevent discharge of a police officer for performance which may be caused by drug use. Relator failed to perform the duties of a police officer by violating Civil Service Commission rules, internal police department rules and regulations, and state criminal laws. These violations support a finding of gross misconduct under Civil Service Commission Rule 11.03A.3.

Affirmed.

PARKER, J., dissents with opinion.

PARKER, Judge (dissenting).

I respectfully dissent.

In testing Copeland after having reasonable suspicion of drug use, the police department was following the requirements of Minn.Stat. § 181.951, subd. 5. Subdivision 1(a) of that statute states:

An Employer may not request or require an employee * * * to undergo drug * * * testing except as authorized in this section.

Thus, requesting an employee to submit to a drug test triggers the "Drug and Alcohol Testing in the Workplace" statutes as a whole. *See* Minn.Stat. §§ 181.950–.954. This includes Minn.Stat. § 181.953, subd. 10, which requires that an employer first offer a drug rehabilitation program and

---

1. The reference in the opinion to "all related allegations" clearly does not mean all misconduct emanating from chemical dependency such as drug use, failure to intervene or failure to report criminal conduct. *Johnson,* 450 N.W.2d at 160. That phrase refers to the ALJ's findings of fact relating to the drug test. The *Johnson* court appropriately excluded these findings from those supporting just cause for discharge.

that the employee refuse or fail to complete such a program *before* discharging "an employee on the basis of a positive [drug] test result." *Id.*, subds. 10(a), (b).

The Minneapolis Police Department failed to make any offer of drug rehabilitation to Copeland, pursuant to Minn.Stat. § 181.953, subd. 10(b)(1), after testing him and, in discharging him, failed to comply with section 181.953.

The Commission argues that section 181.-953 merely precludes use of positive test results, not admissions gained through the use of the test, as a basis for employee discharge.

This court recently addressed the issue of what evidence is excluded by the statute in question, in *City of Minneapolis v. Johnson*, 450 N.W.2d 156 (Minn.App.1990). Johnson was a police officer who was identified through an independent FBI investigation as a drug user. He later admitted, in a police department interview, to illegal drug use on two occasions and a failure to intervene when observing drug use at a party. He was then given a drug test. The ALJ specifically found that Johnson's misconduct was *not* the result of any chemical dependency and concluded that he would have been discharged regardless of the positive test results. *Id.* at 158.

This court in *Johnson* stated that Minn. Stat. § 181.953, subd. 10(b),

> prohibits discharge of an employee after the first [drug] test unless the employer has first provided the opportunity for drug or alcohol counseling and rehabilitation *and* the employee has either refused to participate or has participated but has failed to successfully do so.

*Id.* at 160 (emphasis in original). Thus, the *Johnson* court recognized that the focus of subpart (b) is on rehabilitation of chemically dependent employees whose problem is discovered pursuant to the statutory testing procedures. The firing of Johnson could be justified, as a matter of law, because his misconduct was not due to drug dependency and because his drug use was uncovered by an independent investigation, not pursuant to a drug test. Because the Minneapolis Police Department failed to

comply with the statute with regard to Johnson, this court held:

> The test results and all related allegations cannot be considered evidence of just cause for discharge and must be disregarded.

*Id.* at 160.

The distinction of this case from the *Johnson* case is that here the ALJ specifically concluded that *all* of Copeland's misconduct "emanated directly from his chemical dependency" and this was the misconduct the ALJ relied upon in upholding the police department's recommendation for termination.

A further distinction between this case and *Johnson* is that Johnson's misconduct was uncovered by an independent FBI investigation, while Copeland's misconduct was only revealed pursuant to his submission to drug tests given under the procedures mandated by Minn.Stat. § 181.950–.954. Thus, consistent with *Johnson*, this termination cannot be upheld.

The legislature's purpose in passing sections 181.950–.954 was to ensure that employers offer assistance to chemically dependent employees to try to salvage their lives and careers. Accordingly, the statute mandates an offer of drug rehabilitation and either refusal or failure to complete rehabilitation before discharging an employee based on positive drug test results and admissions stemming from such test results.

In this case and in *Johnson* it seems the City of Minneapolis was determined not to apply the drug testing statutes to police officers. There may be reason to forge a complete exception to the statute for law enforcement officers, airline pilots, railroad engineers or medical and paramedical employees, where public health and safety could be considered to be of immediate concern and paramount to the societal interest in rehabilitation of productive employees. If so, the legislature could so act.

Section 181.953, subd. 10(c), does provide a safety-related exception of sorts. An employer may temporarily suspend or trans-

fer an employee who tests positive pending the outcome of the required confirmatory retest, if the employer feels a suspension or transfer is necessary to protect public health or safety. *Id.* Thus, under the present legislative scheme, if employees who affect public health and safety are to be treated differently, the legislature has provided a specific mechanism to provide for the protection of the public and limited the remedy available to the employer. *Id.*

It should be noted that Copeland cooperated fully and told IAD investigators everything about his drug supplier. His admissions resulted in a successful seizure of drugs and the arrest of that drug dealer. To apply section 181.953, subd. 10, to preclude only the use of test results would ensure that, in future, any officer in such a position will refuse to make drug-related confessions after a positive test result in order to avoid discharge. The negative societal consequences of allowing drug dealers to remain at large cannot be intended by the city fathers. I would reverse on the authority of *Johnson.*