*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0017**

James Jones,
Appellant,

vs.

Green Bay Packaging, Inc.,
Respondent.

**Filed August 10, 2015
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CV-14-8791

James Jones, Ham Lake, Minnesota (pro se appellant)

Jeffrey R. Underhill, Ryan R. Dreyer, Morrison Sund PLLC, Minnetonka, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Appellant challenges the summary-judgment dismissal of his claim for wrongful discharge, arguing that the district court erred by holding that an employer can discharge an employee after his or her first positive drug test if the employee refuses to attend a

chemical dependency treatment program initially agreed to by the employer and the employee. We affirm.

## FACTS

Appellant James Jones began working for respondent Green Bay Packaging, Inc. in 2006. On May 1, 2012, Jones was injured in a workplace accident that required him to get stitches for his leg. Pursuant to the terms of a collective bargaining agreement that governed his employment, Green Bay Packaging required Jones to submit a urine sample for drug and alcohol testing as a result of his involvement in the accident. Initial and confirmatory testing revealed that the urine sample submitted by Jones was positive for marijuana use, and Green Bay Packaging placed Jones on unpaid suspension.

On May 9, Green Bay Packaging presented Jones with a Conditional Reinstatement Agreement (CRA), which provided that Jones could retain his employment if he (1) immediately submitted to evaluation by a chemical dependency treatment center approved by Green Bay Packaging, and (2) successfully participated in treatment at that treatment center for the amount of time recommended by the center. The CRA listed treatment centers that Green Bay Packaging had already approved and provided that additional facilities could be approved by the company.

Accordingly, Jones sought Green Bay Packaging's approval for his evaluation and treatment at two facilities which were not listed in the CRA, one of which was Riverplace Counseling Centers. Green Bay Packaging approved both additional treatment centers. Jones visited Riverplace for a chemical dependency assessment on May 17. Following

the assessment, Riverplace recommended that Jones receive outpatient chemical dependency treatment at its facility four times per week.

Jones signed the CRA on May 22, but informed Green Bay Packaging on May 24 that he wished to receive his outpatient chemical dependency treatment at a heretofore unapproved facility, Grace Counseling Services. He claimed that he could not afford the gas money required to attend the program at Riverplace because it was a 30-minute commute from his home and involved four sessions per week. He requested that Green Bay Packaging approve treatment at Grace because the facility was near his home in Ham Lake and its program met only twice per week. Green Bay Packaging denied approval of this alternative treatment program and told Jones that he would be fired if he did not participate in the recommended treatment program at Riverplace. Jones did not participate in the treatment program at Riverplace. Green Bay Packaging then terminated Jones' employment in June 2012.[1]

On May 30, 2014, Jones sued Green Bay Packaging under the Minnesota Drug and Alcohol Testing in the Workplace Act (DATWA), alleging that he was wrongfully discharged because he did not refuse chemical dependency treatment within the language of the statute and that Green Bay Packaging acted arbitrarily and capriciously in restricting his choice of treatment centers. Green Bay Packaging moved for summary judgment, arguing that, if Jones was discharged, it was in compliance with the statute

---

[1] Whether Jones quit employment or was discharged by Green Bay Packaging was disputed by the parties before the district court. For purposes of this summary-judgment appeal, in reviewing the facts in the light most favorable to Jones, we will assume, as the district court did, that Jones was discharged by Green Bay Packaging.

because Green Bay Packaging gave Jones an opportunity to participate in treatment and he refused. The district court granted summary judgment in favor of Green Bay Packaging, and this appeal followed.

## D E C I S I O N

The sole issue on appeal is whether the district court misconstrued the DATWA and thus erred by entering summary judgment in favor of Green Bay Packaging. "On appeal from summary judgment, we must review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn. 2011). We view the evidence in the light most favorable to the nonmoving party, *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn. 2012), and review de novo the district court's interpretation of statutes, *Kidwell v. Sybaritic, Inc.*, 784 N.W.2d 220, 226 (Minn. 2010).

Generally, "[t]he usual employer-employee relationship is terminable at the will of either party," unless there exists a valid employment contract between employer and employee. *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 371 (Minn. 1995). However, the DATWA renders employers liable for certain actions taken against employees relating to drug and alcohol testing in the workplace. *See* Minn. Stat. § 181.956, subd. 2 (2014) ("[A]n employer . . . that violates sections 181.950 to 181.954 is liable to an employee . . . injured by the violation in a civil action for any damages allowable at law."). Specifically, the DATWA restricts employers from discharging employees as the result of a first positive drug or alcohol test unless two conditions are satisfied:

4

(1) the employer has first given the employee an opportunity to participate in, at the employee's own expense or pursuant to coverage under an employee benefit plan, either a drug or alcohol counseling or rehabilitation program, whichever is more appropriate, as determined by the employer after consultation with a certified chemical use counselor or a physician trained in the diagnosis and treatment of chemical dependency; and

(2) the employee has either refused to participate in the counseling or rehabilitation program or has failed to successfully complete the program, as evidenced by withdrawal from the program before its completion or by a positive test result on a confirmatory test after completion of the program.

Minn. Stat. § 181.953, subd. 10(b) (2014). We have previously held that an employer's failure to provide an employee with an opportunity for any counseling or treatment before discharging an employee after his or her first positive test is a violation of this statute. *City of Minneapolis v. Johnson*, 450 N.W.2d 156, 160 (Minn. App. 1990).

Unlike *Johnson*, resolving this case requires us to determine whether Jones' discharge after his refusal to attend the Green Bay Packaging-approved treatment program was unlawful under the DATWA. Our goal in statutory construction "is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). In order to do so, we "generally give words and phrases their plain and ordinary meaning," while "giv[ing] technical words and phrases their special meaning." *Hous. & Redevelopment Auth. of Duluth v. Lee*, 852 N.W.2d 683, 690 (Minn. 2014); *see* Minn. Stat. § 645.08(1) (2014). If, after this construction, the language of the statute is unambiguous, we apply its plain meaning and do not engage in further statutory construction. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 73 (Minn. 2012).

5

The parties both assert that the statute is unambiguous and that we can apply the plain language of the statute, but give differing interpretations of its plain meaning. First, the parties argue as to the discretion *explicitly* given to employers in the first condition in the statute: "[T]he employer has first given the employee an opportunity to participate in . . . either a drug or alcohol counseling or rehabilitation program, whichever is more appropriate, *as determined by the employer*" after consulting with a treatment professional. Minn. Stat. § 181.953, subd. 10(b)(1) (emphasis added). Green Bay Packaging argues that the phrase "as determined by the employer" in the statute "refers to all decisions regarding the employee's opportunity to participate in counseling or rehabilitation," allowing employers to select "where and what type of treatment the employee must complete to remain employed." Jones argues that Green Bay Packaging reads this provision too broadly and that under this section, "The only thing that [the] DATWA requires of an employee to protect his job [is] that he participate in an appropriate program determined by the employer—counseling or rehabilitation."

We agree with Jones on this point. Insofar as Green Bay Packaging relies on the phrase "as determined by the employer," it reads this language too broadly. The plain language of this phrase provides that the employer must give the employee the opportunity to attend "*either* a drug or alcohol counseling or rehabilitation program, whichever is *more appropriate,*" indicating only that the employer is tasked with deciding whether counseling or rehabilitation is more appropriate for the employee. *See id.* (emphasis added).

6

But, under the facts of this case, it appears irrelevant whether the statute explicitly allows the employer to decide the *type* of treatment or the specific *program* an employee may attend. The statute provides that the employer need only "give[] the employee an *opportunity* to participate in" a treatment program. *Id.* (emphasis added). In accordance with the CRA, Jones asked if he could be assessed and then treated at Riverplace, and Green Bay Packaging agreed to this arrangement. As acknowledged by Jones, "Green Bay did give him the right to choose a treatment program." In accordance with the statute, and as memorialized in the CRA, Jones was granted the "opportunity" by Green Bay Packaging to participate in a treatment program—the program at Riverplace. Nothing in the plain language of section 181.953 required Green Bay Packaging to grant Jones an *additional* opportunity to attend a different treatment program after the company had already approved the treatment center initially requested by Jones.

Jones further argues that he did not "refuse[] to participate in the counseling or rehabilitation program," the second condition required under Minn. Stat. § 181.953, subd. 10(b), because he was "ready, willing[,] and able to attend treatment at Grace Counseling Services" before Green Bay Packaging terminated him. Essentially, Jones argues that because he was willing to seek treatment from *a* counseling or rehabilitation program at Grace similar to the outpatient treatment recommended by Riverplace, Green Bay Packaging could not terminate his employment under the DATWA.

This argument contradicts the plain language of the statute. The second condition of this section of the statute provides that discharge is appropriate if an employee refuses to attend, or fails to complete, "*the* counseling or rehabilitation program." *Id.*, subd.

7

10(b)(2) (emphasis added). This section requires the employee to complete *the* schedule of treatment that the employer provided the employee an opportunity to attend, not simply *a* treatment program of the type chosen by the employer, as argued by Jones. Moreover, the CRA signed by Jones expressly provided that, "[i]f recommended by the Treatment Center, [Jones would] actively participate as a patient of the Treatment Center for whatever period of time and in whatever status, whether inpatient or outpatient, as the Treatment Center recommends." Jones asked for, and Green Bay Packaging approved, his treatment at Riverplace, and Jones was then assessed at Riverplace and received a recommendation for treatment there. Green Bay Packaging's refusal to allow Jones to attend a different treatment program was not "inexplicabl[e]," as Jones claims; rather, the statute and the CRA both required that Jones complete the treatment program that Green Bay Packaging gave him the opportunity to attend. He refused to do so.

Finally, Jones argues that if we uphold the district court's summary-judgment ruling, we will contravene the legislature's intent in passing the DATWA because denying him relief would allow employers to "require an employee to attend a treatment program that is not in line with the employee's beliefs." This argument is without merit, as it is based solely on facts either outside the record or hypothetical in nature. A justiciable controversy does not exist if a claim "present[s] hypothetical facts that would form an advisory opinion." *Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617−18 (Minn. 2007); *see also Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 439 (Minn. 2002) ("We do not issue advisory opinions, nor do we decide cases merely to establish precedent."). Moreover, it is not the role of the judiciary to consider or answer

8

hypothetical policy questions; those arguments "should be advanced to the legislature, the body that crafted the language that compels the result here." *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 440 (Minn. 2009). To the extent Jones asks this court to decide in his favor based on a hypothetical situation not present in the facts of his case, we reject his argument.

Therefore, we conclude that Green Bay Packaging did not wrongfully discharge Jones under the DATWA and affirm the district court's grant of summary judgment in favor of Green Bay Packaging.

**Affirmed.**